# EXHIBIT B

Exhibit - B

14

COMPLAINT AFFIDAVIT

STATE OF WASHINGTON

ss. Complaint Affidavit

COUNTY OF WALLA WALLA

_____

I declare under the penalty of perjury under the laws of the United States that the following a true and correct to the best of my personal knowledge, beliefs, and experiences, therefore, I state as follows:

I am the plaintiff in the matter of Entler v. Gregoire and submit this complaint affidavit in support of alleged Civil Rights Violation by the Defendant's in that matter.

A. Facts Relevant to Complaint:

(i) Facts Relating to Claim No. 1.

1. Under the Grievance Program (OGP) at pages 8, and 27, I am required to try to informally resolve my grievances complaints by sending Inmate Kites (IK) and Letters to persons involved to try to resolve my complaints. See Attcahment 1, at pp. 8 and 27. This Court can take judicial notice of the OGP under Brown v. Voloff,422 F.3d 926,931 n.7(9th cir 2005).

2. Under page 5 of the OGP at Step 5 I am required to put the names of staff involved in the grievance when I file it. See Attachement 1, at p. 5(Step 5).

3. On June 5, 2012, I submitted an inmate kite (IK) to my counselor Joanna Irwin requesting a Art Curio Permit. See Attachment 2, at p. 1. On June 14, 2012, C/O B. Shatto, the Bar Unit Curio Officer, responded to my June 5, 2012 IK requesting that I fill out a form and return it to him. See Attcahment 2, at p. 1. On June 19, 2012, I filled out the form and returned it to C/O B. Shatto via the Unit mail box. See Attachment 3, and p. 1.

5. On July 18, 2012, I received a copy of the decision by C/O Shatto regarding whether or not my curio was granted. See Attachment 4, at p. 1. Noted in the uper right hand corner of the form stated: "Not approved Not programming, nagative input from staff." See Attachment 4, at p. 1.

6. On July 18, 2012, I sent a IK to C/O Shatto stating that I was on a job waiting list, thus his allegation that I was not programming was baseless. I also requested to know who these staff are that provided negative imput. That I haven't had any major infractions for almost five years. I also requested to know what the negative impute was staff provided. See Attachment 5, at pp. 1-2.

7. Because the decision regarding my curio was decided on July 12, 2012, and I did not receive it until July 18, 2012, 6 of my 20 day time limit to file

Complaint Affidavit

a grievance had already past, leaving me 14 days to file my grievance. So I gave C/O Shatto 7 of my remaining 14 days to respond to my IK and provide me the names of the staff involved, and then I would have 7 days to prepare and file my grievance. See Attachment 4, at pp. 1-2.;Attcahment 5, at p. 2. My IK was not intended as a threat to file a grievance against Mr Shatto if he did not respond to my IK.

8. On July 19, 2012, Unit Manager Lynn/Irish Clark came to my cell to respond to the IK I sent C/O Shatto in July 18, 2012. Mr. Clark told me that the negative impute was with regards to my IK and interactions with my counselor, but he refused to tell me who was all present in the meeting he said was held, and refused to tell me who provided the negative impute. See Attachment 6, at p. 1.

9. On July 19, 2012 when Mr. Clark came to my sell I also told him that I was filing a grievance against him and C/O Shatto for violating my religious beliefs and for retaliating against me for denying my my curio permit.

10. On July 19, 2012, I filed a grievance against Mr. Clark and C/O Shatto, and those staff that were providing the alleged negative impute for Unlawful retaliation and for violating my religious rights. I was told that my grievance was not grievable. See Attcahment 6, at p. 1.

11. The only interactions I have with my counselor Ms. Joann Irwin is requesting legal copies and making informal grievance complaints. Those actions can hardly be said to be negative interactions with staff.

12. As for not programming, I have remained on a job waiting list which is deemed programming for classification proposes. However, my religion prevents me from working for any government that employees economic or a capitolist system. I have not worked for DOC for nearly 5 years because of my religious belief.

13. On July 24, 2012, I was served with a Major Infraction written by Mr. Clark alleging using physical force, intimidation, or courcion against any person, for sending my informal grievance IK dated June 18, 2012 to C/O Shatto. See Attachment 7, at pp. 1-9. I went to my infraction hearing and plead not guilty. I was found guilty by Mr. Jackson and sentenced to 15 days loss of Gym and Yard. See Attachment 7, at pp. 9-10.

14. At the infraction hearing I submitted as my defense that under Brady v. Hall,64 F.3d and Brodheim v. Cry,584 F. 3d I could not be retaliated against and infracted and punished for my participation in the informal grievance process for what I say. That if DOC did not want staff to receive informal grievance complaints containing what DOC could consider as "Hostile, sexual, abusive or threatening language," they should adopt a grievance procedure that the 9th circuit Court of Appeals suggests in Brodheim v. Cry, 584 F.3d at 1273. I also argued that Mr. Clark filed the infraction against me because I filed criminal charges on him with the Walla Walla County Sheriff's Office, for my

grievances against him, and for my grievances against my counselor Ms. Irwin. And requested that the infraction be dismissed. I made these same arguments on my appeal from Mr. Jackson's findings of guilty. My appeal was denied. See Attachment 8, at pp. 1-2.

(ii) <u>Facts Relating to Claim No. 2.</u>

1. I incorporate by reference the facts stated above in Facts Relating to Claim No. 1, in ¶¶ 1-3 as fully reinstated and alleged herein Facts Relating to Claim No. 2.

2. On June 12, 2012, after I got my monthly account statement, I sent a informal grievance resolution IK to the WSP Accounting Department requesting to know where they get the authority to add Legal Financial Obligations (LFO) in the amount of $200.00. See Attachment 9, at p. 1

3. On June 15, 2012, the Accounting Department sent me back my IK with a copy of a Certificate from the Washington State Court of Appeals. See Attachment 9, at pp. 1.

4. On June 18, 2012, I sent another IK to the WSP Accounting Department stating that by their own admissions, they were violating state law by adding this cost bill to my prison account. I told that to remove the cost bill from my account or I would sue them and make them remove it. I then asked whether or not they were going to remove it, YES or NO. See Attcahment 10, at p. 1.

5. On June 18, 2012, the WSP Accounting Department responded to my June 18, 2012 IK, stating that Headquarters in Tumwater added the cost bill to my account, and to contact them with any further questions. See Attachment 10, at p. 1.

6. On June 20, 2012, I sent a letter the the Tumwater LFO's Unit regarding the cost added to my account to try to informally resolve my grievance. See Attachment 11, at p. 1.

7. On July 24, 2012, I was served with a Major Infraction written by Mr. Clark alleging using physical force, intimidation, or coercion against any person, for sending my June 18, 2012, informal grievance IK to the WSP Accounting Department. See Attachment 7, at pp. 1-9. I went to my infraction hearing and plead not guilty. I was found guilty by Mr. Jackson and sentenced to 15 days loss of Gym and Yard. See Attachment 7, at pp. 9-10.

8. At the infraction hearing I submitted as my defense that under Brady v. Hall,64 F.3d and Bredeim v. Cry, 584 F.3d , I could not be retaliated against and infracted and punished for my participation in the informaal grievances process for what I say. That if DOC did not want staff to receive informal grievance complaints containing what DOC could consider as "Hostile, sexual, abusive or threatening language," they should adopt a grievance procedure that the 9th circuit Court of Appeals suggests in Brodheim v. Cry,584 F.3d at 1273. I also argued that Mr. Clark filed the infraction against me because I filed

Complaint Affidavit

criminal charges against him with the Walla Walla County Sheriff's Office, for filing grievances against him, and for filing my grievances against my counselor Ms. Irwin. And requested that the infraction be dismissed. I made these same arguments on my appeal from Mr. Jackson's findings of guilty. My appeal was denied. See Attachment 7, at pp. 9-10.

   (iii). <u>Facts Relevant to Claim No. 3.</u>

   1. I incorporate by reference the facts stated above in Facts Relating to Claim No. 1, in ¶¶1-3, as fully reinstated herein in Facts Relating to Claim No. 3.

   2. On June 25, 2012, I sent a informal grievance resolution IK to Mr. Clark and Superintendent Steven Sinclair, requesting that they terminate Ms. Irwin from employment for refusing to preform her duties imposed upon her by law to provide me legal copies, and if they did not terminate Ms. Irwin from employment I would file criminal charges against them. See Attachment 8, at pp. 1-2.

   3. On June, 27, 2012, I was called into the Baker Unit Sergeant Jessie's Office by Corrections Program Manager (CPM) Ron Knight, and threatened with retaliatory action for sending my June 25, 2012, informal grievance IK to Mr. Clark and Mr. Sinclair saying that I would file criminal charges against them. I was threatened by Mr. Knight with being put in segregarion, and a transfer somewhere else for saying I would file criminal charges against staff in my June 25, 2012 IK.

   4. On July 5, 2012, I filed a criminal complaint with the Walla Walla County Sheriff's Office against Mr. Clark and Ms. Irwin for refusing to perform duties imposed upon them by law. See Attcahment 12, at pp. 1-9.

   5. On July 24, 2012, I was served with a Major Infraction written by Mr. Clark alleging using physical force, intimidation, or coercion against any person, for sending my July 25, 2012 IK to Mr. Clark. See Attachment 7, at pp. 1-9. I went to my infraction hearing and plead not guilty. I was found guilty by Mr. Jackson and sentenced to 15 days loss of Gym and Yard. See Attcahment 7, at pp. 9-10.

   6. At the infraction hearing I submitted as my defense that under Brady v. Hall,64 F.3d and Brodheim v. Cry,584 F.3d, I could not be retaliated against and infracted and punished for my participation in the informal grievance process for what I say. That if DOC did not want staff to receive informal grievance complaints containing what DOC could consider as "Hostile, sexual, abusive, or threatening language," they should adopt a grievance procedure that the 9th circuit Court of Appeal suggests in Brodheim v. Cry,584 F.3d at 1273. I also argued that Mr. Clark filed the infraction against me because I filed criminal charges against him with the Walla Walla County Sheriff's Office, for filing grievances against him, and for filing grievances against my counselor Ms. Irwin. And requested that the infraction be dismissed. I made these same

Complaint Affidavit

arguments on my appeal from Mr. Jackson's findings of guilty. My appeal was denied. See Attachment 8, at pp. 1-2.

(iv) Facts Relevant to Cliam No. 4.

1. I incorporate by reference the facts stated above in Facts Relating to Claim No. 1, in ¶¶1-3, as fully reinstated herein regarding Facts Relevant to Claim No. 4.

2. On July 19, 2012, at 6:30am I was woken by C/O Sullivan and told that I was being assigned a Unit Porter Job. I wrote informal grievance letters to the DOC Religious Programs Manager. See Attachment 13, at p. 5. I sent a copy of that letter to Mr. Clark. See Attachment 13, at p. 4, because as stated below, he was the one who was requiring me to work, thus he was involved in my informal grievance complaint.

3. On July 20, 2012, C/O Sullivan talked to me about my religious beliefs, and told me that she would have to see if I was allowed to be excused from working. On July 21, 2012, C/O Sullivan talked to me again, and she told me that she talked to Mr. Clark, and he made the decision to require me to work.

4. Requiring me to work violates my religious beliefs. I have not worked for DOC since February 2007, because of my religious beliefs, If do not work, I am automatically subject to infraction and punishment for exercising my religious beliefs. Mr Clark does not have to directly state that I will be infracted, the implication of being infracted is asserted by telling me there assigning me a job.

5. On July 23, 2012, I filed a grievance against Mr. Clark for making me work contrary to my religious beliefs under threat of infraction and punishment. See Attachment 14, at p. 1. I was told that the issue was not grievable. See Attachment 14, at p. 1.

6. DOC does not require Seventh-Day Adventists or Jews to work on the Sabbath, contrary to RCW 72.09.460, and they are not subject to infraction and punishment for refusing to work on that day. I know this because I was a practicing Seventh-Day Adventist for 15 years, and in 2005, Sgt. Caughren at WSP tried to make me work on the sabbath, and the DOC Religious Programs Manager issued a letter to me and Sgt. Caughren saying that I did not have to work on the sabbath day.

7. On August 2, 2012, I was served with a Major Infraction written by Mr. Clark alleging using physical force, intimidation, or coercion against any person, for writing my July 19, 2012, informal grievance complaint to the DOC Religious Programs Manager. See Attachment 13, at pp. 1-5. I went to my infraction hearing and plead not guilty. I was found guilty by Mr. Pierce and sentenced to 5 days cell confinement. See Attachment 13, at pp. 6-7.

///

Complaint Affidavit

8. At the infraction hearing and in my appeal from the infraction, I submitted as my defense that under Bradly v. Hall,65 F.3d and Brodheim v. Cry,584 F.3d, I could not be retaliated against, infracted, and punished for my participation in the informal grievance process for what I say. That if DOC did not want staff to receive informal grievance complaints containing what DOC could consider as "Hostile, sexual, abusive, or threatening language," they should adopt a grievance procedure that the 9th Circuit Court of Appeals suggests in Brodheim v. Cry,584 F.3d at 1273. I also argued that Mr. Clark filed the infraction against me because I filed criminal charges against him with the Walla Walla County Sheriff's Office, for filing grievances against him, and for filing grievance against my counselor Ms. Irwin. And requested that the infraction be dismissed.

9. Based on the fact that Mr. Pierce said that he was going to reduce the other two major infractions written by Mr. Clark, to minors and just give me a warning on them, I waived my rights to be present during those hearings in an attempt to stop the circle of infractions, as this was Mr. Pierce's rational he explained to me was the reason he was going to reduce the other two major infractions to a minor and give me warnings.

(v) Facts Relevant To Claim No. 5:

1. I incorporate by reference the facts stated above in Facts Relevant to Claim No. 1, in ¶¶1-3, as fully reinstated herein in Facts Relevant to Claim No. 5.

2. Based on the infractions written by Mr. Clark above in Facts Relevant to Claims 1, 2, and 3, on August 1, 2012, I wrote informal grievance complaints to Berny Warner Secretary of DOC and Christine Gregoire, Governor, requesting that they stop Mr. Clark's illegal conduct of infracting me for what I say in my informal grievance complaints. See Attachment 15, at pp. 2-5.

3. On August 10, 2012, I was served with a Major Infraction written by Mr. Clark alleging using physical force, intimidation, or coercion against any person, for sending my August 1, 2012 letters to Mr. Warner and Ms. Gregoire. See Attachment 15, at pp. 1-7. I did not go to my infraction hearing because Mr. Pierce told me that he was going to reduce the infraction to a minor and give me a warning. See ¶9 above in Facts relevant to Claim No. 4.

4. On August 17, 2012, I filed my appeal because Mr. Pierce lied to me and gave me 5 more days of Cell Confinement, See Attachment 16, at p. 1, for the infraction, when he told me that he was only going to give me a warning. Thus, Mr. Pierce's lie to me caused me to waive my right to be present at the infraction hearing, and put on a defense. I requested a new hearing, and/or that the infraction be dismissed in my appeal.

5. I did submit a written statement stating that I could not be punished for what I say in the informal grievance process under Bradly v. Hall, and Brodheim v. Cry. See Attachment 16, at p. 2.

6. If I would not have been lied to my Mr. Pierce, I would have appeared and argued in the hearing, like I argued in the other ones, that under Bradly v. Hall,65 F.3d and Brodheim v. Cry,584 F.3d I could not be retaliated against, infracted, and punished for my participation in the informal grievance process for what I say. That if DOC or the Government did not want staff or state officials to receive informal complaints containing what DOC or the Government could consider as "Hostile, sexual, abusive, or threatening language," they should adopt a grievance procedure that the 9th Circuit Court of Appeals suggests in Brodheim v. Cry,584 F.3d at 1273. I would have also argued that Mr. Clark filed the infraction against me because I filed criminal charges against him with the Walla Walla County Sheriff's Office, for filing grievance against him, and for filing grievances against my counselor Ms. Irwin. And I would have requested that the infraction be dismissed.

(vi) <u>Facts Relevant to Claim No. 6</u>:

1. I incorporate by reference the facts stated above in Facts Relevant to Claim No. 1, in ¶¶1-3, as fully reinstated herein in Facts Relevant to Claims No. 6.

2. On July 22, 2012, I sent a Inmate Kite (IK) to Mr. Clark stating that because he made the decision to make me work contrary to my religious beliefs under threat of being infracted for refusing to work, he would be the one I was going to sue for the violation of my religious rights. See Attachment 17, at pp. 2-3.

3. On August 6, 2012, I was served with a Major Infraction written by Mr. Clark alleging using physical force, intimidation, or coercion against any person, for sending my IK dated July 22, 2012, to him, and a minor infraction alleging Lying to Staff. See Attachment 17, at pp. 1-4. Mr. Pierce found me guilty of both infractions. See Attachment 17, at p. 5.

4. On August 17, 2012, I was served with Mr. Pierce's findings, finding me guilty of both infractions, although he did reduce the major infraction to a minor. See Attachment 17, at p. 5.

5. I filed my appeal because Mr. Pierce told me that he was only going to reduce Major Infraction to minor infraction and give me a warning. But Mr. Pierce did not do that. See Attachment 17, at p. 6. Mr. Pierce, based his finding of guilt on harassment in sending multiple kites and grievances threatening legal suits, that were not in the evidence, and warning me about what I say and request in future informal grievances, and threatened me with a major infraction, for what I say and request in future informal grievance complaints. See Attachment 17, at p. 5.

6. My July 22, 2012 IK was not sent to multiple staff with kites and grievances threatening legal suit if staff do not make decisions or actions in my favor. My August 22, 2012 kite was sent to Mr. Clark only. See Attachment

Complaint Affidavit

17, at pp. 1-4.

7. Based on the fact that Mr. Pierce said that he was only going to reduce the major infraction to a minor, and give me a warning only, I waived my rights to be present during the infraction hearing, in an attempt to stop the cycle of infractions, as this was Mr. Pierce's rational he explained to me was the reason why he was going to reduce the major infraction to a minor and only give me a warning.

8. If I would not have been lied to by Mr. Pierce, I would have appeared and argued that he could not threaten me with an infraction for what I say and request in future informal grievance complaints under Bradly v. Hall,65 F.3d and Brodiem v. Cry,584 F.3d, See Attachment 17, at pp. 1-2, that Mr. Clark wrote me a false minor infraction saying that I was lying to staff because he did not threaten me with an infraction.

9. I did not lie to staff because an inmate is automatically subject to infraction if he refuses to work when told he is being assigned a inmate job, with a WAC Infraction #557(Refusing to participate in an available educational or work program). Mr. Clark did not need to say that I would be infracted if I refused to work, the threat of infraction is already included in being assigned to a inmate job. You cannot refuse, because if you do you will be infracted with a WAC infraction #557.

10. I also would have argued and stated that Mr. Clark filed these infractions against me because I filed criminal charges against him with the Walla Walla County Sheriff's Office, for filing grievances against him, and for filing grievances against my counselor Ms. Irwin, and I would have requested that the infractions be dismissed.

(vii) Facts Relevant to Claim No. 7:

1. I incorporate by reference the facts stated above in Facts Relevant to Claims No.'s 1,¶¶1-14;  2,¶¶1-8; 3,¶¶1-6; 4,¶¶1——9; 5,¶¶1-6; and 6,¶¶1-10, as fully reinstated herein in Facts Relevant to Claim No. 7.

2. Ms. Gregoire is charged under Article 13,§1 of the Washington State Constitution to appoint a Secretary of the Department of Corrections (DOC). Pursuant to that authority she has appointed Mr. Warner as Secretary of DOC.

3. Ms. Gregoire has a **DUTY** under Article 3§5 of the Washington State Constitution to see that the Laws of the State of Washington with regards to DOC are being faithfully executed within DOC.

4. Article 3,§5 of the Washington State Constitution states: "The governor may require information in writing from the state officers relating to the duties of their respective offices, and shall see that the laws are being faithfully executed."

Complaint Affidavit

5. Under Revised Code of Washington (RCW) 43.01.125(Duty to identify employees whose performance warrants termination from Employement), it is the responsibility of Mr. Warner to institute management procedures designed to identify any DOC employee, either supervisory or nonsupervisory, whose performance is so inadequate as to warrent termination from state employement. See Also RCW 41.06.186(same), RCW 41.06.196(Same).

6. Also under RCW 43.01.125, it is the responscibility of Mr. Warner and Ms. Gregoire to remove from a supervisory position any superior within DOC who has tolerated the continued employement of any employee under his or her supervision whose performance has warranted termination from state employement. See Couger Business Owner's Ass'n v. State,97 Wash. 2d 466,472,647 Pac. 2d 481(1982).

7. Under RCW 42.20.100(Failure Of Duty by Public Officer) provides that: "when-ever any duty is enjoined by law upon a public officer or other person holding any public trust or employment, their willful neglect to perform such duty, except where otherwise specifically provide for, shall be a misdemeanor."

8. Under RCW 9A.80.010(Official Misconduct) provides in relevant part: "(1) A public servant is guilty of official misconduct if, ... to deprive another person of a lawful right or privilege: (a) he intentionally commits an unauthorized act under color of law; or (b) he intentionally refrains from performing a duty imposed upon him by law. (2) Official misconduct is a gross misdemeanor."

9. Ms. Gregoire refuses to perform her duties under Article 3,§5 of the Washington State Constitution to see that the Laws of the State of Washington with regards to DOC are being faithfully executed within DOC. See Attachment 18, at pp. 1-2.

10. Mr. Warner has not performed his duties under RCW 43.01.125 to institute management procedures to identify DOC emoplyee's, and thier supervisors, who commit crimes against inmates.

11. Mr. Warner and Superintendent Steven Sinclair has condoned Mr. Clark's conduct of committing crimes against Mr. Entler under RCW 9A.80.010(1)(a) & (b), based on the facts stated above in Facts Pertaining to Claims, 1, 2, 3, 4, and 5. See Attachment 19, at pp. 1-4.

12. Except for Ms. Gregoire, Mr. Warner nor Mr. Sinclair has responded to Mr. Entler's complaints of Mr. Clark violating Mr. Entler's Civil Rights, nor taken official action to stop Mr. Clark from violating Mr. Entler Civil Rights under the First Amendment to the United States Constitution, or form committing crimes against Mr. Entler under RCW 9A.80.010(1)(a) & (b).

13. Ms. Gregoire has participated in the Civil Rights Violations of Mr. Entler as described below in Section B by refusing to preform her duties imposed by law under Article 3,§5 of the Washington State Constitution.

14. Ms. Gregoire has committed a crime under RCW 42.20.100 by deliberately refusing to perform her duties imposed by law under Article 3,§5 of the Washington State Constitution to insure that the laws relating to DOC are faithfully executed within DOC.

15. Mr. Warner has participated in the Civil Rights violations of Mr. Entler described below in Section B, by refusing to comply with his duties under RCW 43.01.125, RCW 41.06.186, and RCW 41.06.196 to (1) adopt management procedures to identify and terminate DOC employees who commit crimes against inmates and who violate inmates civil rights, (2) by failing to terminate from employment supervisors who tolerate the commission of crimes and civil rights violations of prisoners under RCW 9A.80.010(1)(a) & (b), (3) refuses to terminate from employment DOC Staff who commit crimes and civil rights violations against inmates.

16. Mr. Warner has committed a crime under RCW 42.20.100 by wilfully neglecting to perform duties imposed upon him by law under RCW 43.01.125, RCW 41.06.186, and RCW 41.06.196.

17. Mr. Warner has committed a crime under RCW 9A.80.010(1)(a) & (b), by (1) intentionally participating in an unauthorized act of Unlawful First Amendment Retaliation under color of law, and (2) by intentionally refraining from performing his duties under RCW 43.01.125, RCW 41.06.186, and RCW 41.06.196 imposed upon him by law.

18. Mr. Sinclair has participated in the Civil Rights violations of Mr. Entler as described below in Section B, by tolerating and condoning the commission of crimes against Mr. Entler by Mr. Clark and Mr. Pierce under RCW 9A.80.010(1)(a) under color of law.

19. Mr. Sinclair has committed a crimes under RCW 9A.08.010(1)(a) & (b), by intentionally committing an unauthorized act of Unlawful First Amendment Retaliation under color of law.

20. Mr. Sinclair has participated in the civil rights violations of Mr. Entler, as described below in Section B, by tolerating and condoning the civil rights violations against Mr. Entler by Mr. Clark and Mr. Pierce under color of law, under RCW 9A.08.010(1)(a).

B. Claims For Relief.

(i) Claims Regarding Claim No. 1:

1. Based on the Facts Relevant to Claim No. 1, I submit, that (1) Mr. Clark took the adverse action of writing me an infraction (2) because of (3) my protected conduct of filing grievances, and criminal charges against him with the Walla Walla County Sheriff's Office, (4) that such adverse action have a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 1, I submit that (1) Mr. Clark took the adverse action of writing me an infraction to warn me about what I say and request my informal grievance resolution requests, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

(ii) <u>Claims Regarding Claim No. 2</u>:

1. Based on the Facts Relevant to Claim No. 2, I submit that (1) Mr. Clark took the adverse action of writing me an infraction (2) because of (3) my protected conduct of filing grievances and criminal charges against him with the Walla Walla County Sheriff's Office, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 2, I submit that (1) Mr. Clark took the adverse action of writing me an infraction to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

(iii) <u>Claims Regarding Claim No. 3</u>:

1. Based on the Facts Relevant to Claim No. 3, I submit that (1) Mr. Clark took the adverse action of writing me an infraction (2) because of (3) my protected conduct of filing grievances and criminal charges against him with the Walla Walla County Sheriff's Office, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 3, I submit that (1) Mr. Clark took the adverse action of writing me an infraction to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

3. Based on the Facts Relevant to Claim No. 3, I submit that Mr. Ron Knight took the adverse action of warning me and threatening me with being placed in segregation and a transfer, (2) because of (3) for what I say and request in my informal grievance resolution request to Mr Clark, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) that such adverse action did not reasonably advance a legitimate correctional goal.

(iv) <u>Claims Relating to Claim No. 4</u>:

1. Based on the Facts Relevant to Claim No. 4, I submit that (1) Mr. Clark took the adverse action of writing me an infraction (2) because of (3) my protected conduct of filing grievances against him, and filing criminal charges against him with the Walla Walla County Sheriff's Office, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 4, I submit that (1) Mr. Clark took the adverse action of writing me an infraction to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

3. Based on the Facts Relevant to Claim No. 4, I submit that (1) Mr. Pierce took the adverse action of finding me guilty of the infraction written by Mr. Clark, to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

(v) <u>Claims Relating to Claim No. 5</u>:

1. Based on the Facts Relevant to Claim No. 5, I submit that (1) Mr. Clark took the adverse action of writing me an infraction (2) because of (3) my protected conduct of filing grievances, and criminal charges against him with the Walla Walla County Sheriff's Office, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 5, I submit that Mr. Clark took the adverse action of writing me an infraction to warn me about what I say and request in my informal grievance resolution requests (2) because of (3) my protected rights to petition the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

3. Based on the Facts Relevant to Claim No. 5. I submit, that Mr. Pierce took the adverse action of finding me guilty of the infraction written by Mr. Clark, to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise on my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

Complaint Affidavit

Page 12 of 18

(vi) <u>Claims Relating to Claim No. 6</u>:

1. Based on the Facts Relevant to Claim No. 6, I submit that (1) Mr. Clark took the adverse action of writing me an infraction (2) because of (3) my protected conduct of filing grievances against him, and filing criminal charges against him with the Walla Walla County Sheriff's Office, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 6, I submit that (1) Mr. Clark took the adverse action of writing me an infraction to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

3. Based on the Facts Relevant to Claim No. 6, I submit that (1) Mr. Pierce took the adverse action of finding me guilty of the infraction written by Mr. Clark, to warn me about what I say and request in my informal grievance resolution requests, (2) because of (3) my petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

(vii) <u>Claims Relating to Claim No. 7</u>:

1. Based on the Facts Relevant to Claim No. 1, 2, 3, 4, 5, 6, and 7, I submit that (1) Ms. Gregoire took the adverse action of participating in the adverse actions of Mr. Clark and Mr. Pierce, by refusing to perform her duties under Article 3, §5 of the Washington State Constitution, and by refusing to perform her duties under RCW 43.01.125, RCW 41.06.186, and RCW 41.06.196, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action has a chilling effect on the exercise of my First Amendment rights, and (5) such adverse action did not reasonably advance a legitimate correctional goal.

2. Based on the Facts Relevant to Claim No. 1, 2, 3, 4, 5, 6, and 7, I submit that (1) Mr. Warner took the adverse action of participating in Mr. Clark's and Mr. Pierce's adverse actions, by refusing to perform his duties under RCW 43.01.125, RCW 41.06.186, and RCW 41.06.196, (2) because of (3) my protected conduct of petitioning the government for redress of grievances, (4) that such adverse action by Mr. Warner has a chilling effect on the exercise of my First Amendment rights, and (5) Mr. Warner's adverse actions did not reasonably advance a legitimate correctional goal.

3. Based on the Facts Relevant to Claim No. 1, 2, 3, 4, 5, 6, and 7, I submit, that (1) Mr. Sinclair took the adverse action of participating in Mr.

Clark's and Mr. Pierce's adverse actions, by upholding Mr. Clark's infraction and warnings to me, and Mr. Pierce's findings of guilt, warning me about what I say and request in my informal grievance resolution requests, and in my future informal grievance resolution requests, (2) because of (3) my grievances and petitioning the government for redress of grievances, (4) that such adverse action by Mr. Sinclair has a chilling effect on the exercise on my First Amendment rights, and (5) such adverse action by Mr. Sinclair did not reasonably advance a legitimate correctional goal.

C. Request For Relief.

   (i) Claim No. 1:

      1. For claims 1-2 above in section B, I request punitive and nominal damages against Mr. Clark for his deliberate and malicious violation of my First Amendment rights, and I request a declaration that Mr. Clark violated my First Amendment rights.

   (ii) Claim No. 2:

      1. For claims 1-2 above in section B, I request punitive and nominal damages against Mr. Clark for his deliberate and malicious violation of my First Amendment rights, and I request a declaration that Mr. Clark violated my First Amendment rights.

   (iii) Claim No. 3:
      1. For claims 1-3 above in section B, I request punitive and nominal damages for Mr. Clark's and Mr. Knight's deliberate and malicious violation of my First Amendment rights, and I request a declaration that Mr. Clark and Mr. Knight violated my First Amendment rights.

   (iv) Claim No. 4:

      1. For claims 1-3 above in section B, I request punitive and nominal damages against Mr. Clark and Mr. Pierce for their deliberate and malicious violation of my First Amendment rights, and I request a declaration that Mr. Clark and Mr. Pierce violated my First Amendment rights.

   (v) Claim No. 5:

      1. For claims 1-3 above in section B, I request punitive and nominal damages against Mr. Clark and Mr. Pierce for their deliberate and malicious violation of my First Amendment rights, and I request a declaration that Mr. Clark and Mr. Pierce violated my First Amendment rights.

   (vi) Claim No. 6:

      1. For claims 1-3 above in section B, I request punitive and nominal damages against Mr. Clark and Mr. Pierce for their deliberate and malicious

violation of my First Amendment rights, and I request a declaration that Mr. Clark, and Mr. Pierce violated my First Amendment rights.

    (vii) <u>Claim No.7</u>:

      For claims 1-3 above in section B, I request punitive and nominal damages against Ms. Gregoire, Mr. Warner, and Mr. Sinclair, for their deliberate and malicious participation in the violation of my First Amendment rights, and for the violation of my First Amendment rights, and I request a declaration that Ms. Gregoire, Mr. Warner, and Mr. Sinclair, participated in the violation of my First Amendment rights, and violated my First Amendment rights.

D. <u>State Law Claims</u>.

    (i) <u>Facts Relevant to Claim No. 8</u>:

    1. I incorporate by reference the facts stated above in Facts Relevant to Federal Claims No.'s 1,¶¶1-14, 2,¶¶1-8, 3,¶¶1-6, 4,¶¶1-9, 5,¶¶1-6, 6,¶¶1-10, and 7,¶¶1-20, as fully reinstated herein, in Facts Relevant to Claim No. 8, State Law Claims.

    2. A person commits the offense of Criminal Profiteering Activity (WCPA) by intentionally inciting or inducing others to engage in intimidation with the intent to further or promote the accomplishment of a pattern of criminal profiteering activity.

    3. Defendant's incited and/or induced each other to engage in intimidation by preforming acts or by refraining from preforming acts, with the intent to further and promote the accomplishment of a pattern of criminal profiteering activity, in 2012, (Four Major Infractions submitted by Mr. Clark on July 24, 2012, August 2, 2012, August 6, 2012, and August 10, 2012, threats by Mr. Knight on June 27, 2012, and threats by Mr. Pierce on August 15, 2012).

    4. A pattern of criminal profiteering activity is defined as engaging in at least three acts of criminal profiteering, one of which occurred within five years after commission of the earliest act of criminal profiteering.

    5. In paragraph 3 above I have alleged six (6) acts of criminal profiteering activity with the last act occurred within five years after the commission of the earliest act on July 24, 2012, of criminal profiteering.

    6. In order to constitute a pattern, the three acts must have the same or similar intent, results, accomplices, principles, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events.

///

Complaint Affidavit

7. Defendants acts have the same or similar intent (to obtain My services to abstain from conduct which I have a rights to engage in), accomplices, principles (Mr. Clark, Mr. Knight, Mr. Pierce, Ms. Gregoire, Mr. Warner, and Mr. Sinclair), victim (Mr. Entler), method of commission infractions, retaliation, threats, and failure to take action required by law), and the nexus to the same enterprise (Department of Corrections).

8. Defendants conduct is not an isolated events, because Defendants conduct evidences an intent to accomplish different means of committing the three acts, (1) to stop me from filing grievances, (2) to stop me from filing criminal charges, and (3) to stop me from pursuing Civil Rights Complaints. In addition, Defendant's have used the same methods of commission of criminal profiteering activity against other inmates, See Silva v. DiVittorio,658 F.3d 1090,1104-05(9th cir. 2011).

9. An "Enterprise" includes governmental entities, such as the Department of Corrections and the Governor's Office.

10. Criminal profiteering means any act included any anticipatory or completed offense, committed for pecuniary gain, that is chargeable or indictable under State Law in which the act occurred, as any of the following: (1) Extortion as defined in RCW 9A.56.110, RCW 9A.56.120, and RCW 9A.56.130, (2) Criminal Profiteering Activity as defined in RCW 9A.82.060.

11. "Pecuniary gain" means, any gain or advantage in the form of money, property, commercial interest, or anything else the primary significance of which is economic gain.

12. I claim that Defendant's committed the acts of criminal profiteering activity for financial gain, (i.e., to stop my grievance actiuvities, to stop me from filing criminal chages, and to stop me from filing Civil Rights litigation (exposing them and thier conduct), in order to continue to financially gain from their illegal activities through their employment within the Washington State Department of Corrections and the Governor's Office).

13. Extortion is defined in relevant part under RCW 9A.56.110 to mean: "'Extortion' means knowingly to obtain or attempt to obtain by threat ... services of the owner." A "threat" is defined by RCW 9A.04.100(27), and "Services" is defined by RCW 9A.56.010(12).

14. A person is guilty of extortion in the first degree if he commits extortion by means of a threat as defined in RCW 9A.04.100(27)(a),(b), or (c). Extortion in the First Degree is a class B felony.

15. Defendant's committed extortion in the first degree by means of (1) attempting to obtain my services to abstain from preforming acts which I have a legal rights to engage in (i.e., filing grievance, filing criminal

charges, and filing Civil Rights litigation), and (2) a threat defined in RCW 9A.04.100(27)(c), by (i) subjecting me to loss of good time through major infractions, so they could subject me to more physical confinement (imprisonment), and (ii) subjecting me to restraint (Cell Confinement for 10 days).

16. A person in guilty of extortion in the second degree if he or she commits extortion by means of a wrongful threat as defined in RCW 9A.04.100(27)(d) through (j). Extortion in the second degree is a class C felony.

17. Defendant's committed extortion in the second degree by means of (1) attempting to obtain my services to abstain from preforming acts which I have a legal right to engage in (i.e., filing grievances, filing criminal charges, and filing Civil Rights litigation), and (2) by wrongful threat as defined in RCW 9A.04.100(27)(h) by (i) taking wrongful action as an official against me (i.e., writing me infractions for conduct I have a legal right to engage in, and (ii) wronfully withholding, or wrongfully causing such action or withholding, of official action (i.e., refusing to perform duties imposed by law under Art. 3,§5 of Wash. St. Const., RCW 43.01.125, RCW 41.06.186, and RCW 41.06.196, and participating in and engaging in acts of Unlawful First Amendment Retaliation).

D. Claim For Relief On State Claim.

1. Based on the Facts Relevant to Claims 1, 2, 3, 4, 5, 6, and 7, stated above in section B, (Federal Claims), and the Facts Relevant to Claim No. 8, (State Claims), I claim that, Defendant's engaged in acts of criminal profiteering activity by intentionally inciting and inducing each other to engage in intimidation of me, with the intent to further and promote the accomplishment of a pattern of criminal profiteering activity, for financial gain, which said acts occurred after July 1, 1985), and the last (in August 10, 2012) of which occurred within five years after the commission of the earliest (July 24, 2012) act, and the pattern has the same or similar intent, accomplices, principles, victims, method of commission, including a nexus to the same enterprise, and were not isolated events. That Defendant's committed criminal profiteering for pecuniary gain, that is chargeable and indictable under the criminal laws as Extortion in the First Degree, Extortion in the Second Degree, and Criminal Profiteering Activity.

E. Relief Requested On State Claims.

1. I request a penalty under RCW 9A.80.100(d) in an amount not exceeding TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), be imposed upon the Defendant's.

///
///
///

Complaint Affidavit

I declare under the penalty of perjury under the laws of the United States that the above is true and correct to the best of my personal knowledge, beliefs, and experiences.

Signed this ___4th___ day of ___September___, 2012

Signed: _____
JOHN THOMAS ENTLER, #964471
WASHINGTON STATE PENITENTIARY
1313 N. 13TH AVE.
WALLA WALLA, WA. 99362

Subscribed to and sworn to before me this ___4th___ day of ___September___, 2012.

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF WASHINGTON, RESIDING
AT WALLA WALLA COUNTY, WASHINGTON
MY COMMISSION EXPIRES: _8/20/15_.

Notary Public
State of Washington
WANDA K. HEIMANN
MY COMMISSION EXPIRES
August 20, 2015

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

Complaint Affidavit

Page 18 of 18
32



Working Together for Safe Communities

**DOC**

Washington State
DEPARTMENT OF CORRECTIONS

# Department of Corrections



# OFFENDER GRIEVANCE PROGRAM

P-371 9/11/09

## *Department of Corrections Grievance Program Manual*

*DOC Policy 550.100 – Offender Grievance Program* ................................................................ *5*

*What is the Offender Grievance Program?* ................................................................ *6*

*History of the Offender Grievance Program* ................................................................ *7*

*What Is Informal Resolution?* ................................................................ *8*

*What Is A Grievance?* ................................................................ *9*

*What Is An Emergency Grievance?* ................................................................ *10*

*What Is Grievable?* ................................................................ *11*

*What is Considered Not Grievable?* ................................................................ *12*

*Is My Grievance Kept Confidential?* ................................................................ *14*

*Access the Grievance Policy, Procedure and Forms* ................................................................ *15*

*How Do I Write A Grievance?* ................................................................ *16*

*How Do I File A Grievance?* ................................................................ *18*

*Why Would My Grievance Be Returned?* ................................................................ *19*

*What Happens After I File The Grievance?* ................................................................ *20*

*What If I Transfer or Am Released From Supervision?* ................................................................ *23*

*What Are the Grievance Process Time Frames?* ................................................................ *24*

*What If More Time Is Needed?* ................................................................ *26*

*How Is A Grievance Resolved?* ................................................................ *27*

*How Do I Appeal the Outcome of My Grievance?* ................................................................ *28*

*Can I File A Tort Claim While A Grievance Is In Process?* ................................................................ *29*

*What If My Grievance Involves Sexual Assault, Sexual Abuse, Rape and/or Staff Sexual Misconduct* ...... *30*

*How Are Allegations of Retaliation or Misconduct Investigated?* ................................................................ *31*

*Can I Be Disciplined For Filing A Grievance?* ................................................................ *32*

*How Can I Make Suggestions/Changes to the Offender Grievance Program?* ................................................................ *35*

*How Are Grievance Documents Archived/Stored?* ................................................................ *36*

*What about Litigation?* ................................................................ *37*

*What Are the Grievance Program Staff Roles and Responsibilities?* ................................................................ *38*

*Definitions* ................................................................ *40*

*Forms* ................................................................ *43*

# WHAT IS THE OFFENDER GRIEVANCE PROGRAM?

**Purpose**

The Offender Grievance Program is an internal grievance and appeal system that promotes proper and effective communication between staff and offenders in an effort to resolve issues at the lowest possible level. Staff and offenders are encouraged to resolve problems together as part of their routine interaction.

**Philosophy**

The Offender Grievance Program offers open access to a process which allows for the meaningful negotiation of problems to a just and fair conclusion. It recognizes the human dignity of offenders and staff as well as the privileges and limitations of the state. It offers a fair and satisfactory solution to a wide variety of conflict situations.

**Goal**

The primary long-term goal of the program is the reduction of processing time to facilitate an increase in proactive informal resolution of offender issues.

This Manual:

- explains how and when an offender can access the grievance program; and

- provides management and staff with information and guidance needed to support the offender grievance program locally.

---

**IMPORTANT: The Offender grievance Manual will not replace existing administrative channels of problem resolution.**

---

## PROVISIONS

## The Offender Grievance Program provides:

| | |
|---|---|
| For the Offender | consistent grievance policies, procedures, and forms for an offender from date of arrival at a reception center through institutional confinement, while at work release facilities, and while on community supervision. |
| | a way for every offender to have his/her grievance heard and dealt with in a formal manner. |
| | administrative review and resolution when informal resolution is not possible. |
| | fair and prompt decisions and actions in response to offender grievances. |
| | regularly available channels for hearing and resolving offender grievances. |
| For the Department | a management tool for administrators to be informed of developing trends and specific problems so that they may be addressed in a timely manner. |
| | a means to reduce conflict between offenders and the Department of Corrections. |
| | administrative remedies to complaints that otherwise may cause an unnecessary burden on the courts. |

## Changes

The Grievance Coordinator is often the first point of contact in changing important issues. He/she should consult with appropriate staff and submit recommendations to the proper authority when change to policies, procedures, and practices appears warranted. Likewise, the coordinator should not hesitate to tell offenders when no change appears warranted and state the reason(s) for the decision in their response.

## Management Information System

An integral part of the offender grievance program is its computerized Management Information System (MIS) which permits:

- Remote data entry by local grievance coordinators.

- Monitoring and auditing capability at the Grievance Program Office.

- Indexing of complaints and grievances by name/DOC number of individual offenders.

- On time synopsis of individual grievances/complaints and their status within the grievance system.

- On site generation of statistical reports.

## HISTORY OF OFFENDER GRIEVANCE PROGRAM

The first grievance program began as a pilot project at the Washington State Penitentiary in 1980. The staff involved in that project persevered to pioneer a program that reshaped the manner in which staff interact with offenders and, possibly, stemmed the tide of violence and destruction of property that had become routine in our prison system.

Here is a brief chronology of program milestones:

| DATE | MILESTONE |
|------|-----------|
| 1979 | The Division of Institutions (later to become Department of Corrections) begins planning for an offender grievance system within its facilities after a riot at the Washington State Penitentiary. |
| August 25, 1980 | A one-year pilot project begins at the Penitentiary. |
| August 1981 | Modified grievance system is instituted at the Department's other institutions. |
| November 1981 | A standardized grievance manual is published. |
| May 25, 1984 | The grievance procedure at WSP is certified by the United States (Eastern) District Court. Certification of all institution grievance programs soon follows. |
| October 1984 | Grievance procedure is expanded to include offenders under community supervision. |
| September 9, 1985 | A revised Offender Grievance Program is implemented. |
| August 2009 | A major revision of the Offender Grievance Program Manual is implemented. |

This manual revision is necessary to provide a simple explanation of the Offender Grievance Program and to provide easy to follow steps for the grievance process. Staff and offender feedback was encouraged and incorporated.

# WHAT IS INFORMAL RESOLUTION?

## Introduction

Resolution begins with communication. Many times you can find resolution to your issue quickly by opening lines of communication with staff or persons involved.

In all cases, informal resolution of conflict is preferable to the filing of a formal grievance. This means that you are encouraged to participate in problem solving by seeking the earliest possible resolution of problems. This does not mean that the filing of grievances is discouraged.

### What you should do?

You should try to informally resolve your issue before filing a formal grievance. You have 20 days in which to file a complaint which gives you a longer time frame to attempt to resolve the issue before filing a grievance.

- Talk to staff or persons involved in an attempt to reach resolution.

- Submit a Kite or letter to get the matter addressed or forward facts leading up to the situation.

It is important to let the grievance coordinator know what steps you have taken to resolve the issue and what you received as a result of those steps.

The grievance coordinator will often look at the issue and try to answer questions or suggest other processes available for resolution. If these options do not satisfy resolution, you may mark the appeal box to formalize your grievance.

## WHAT IS A GRIEVANCE?

A grievance is a <u>typed</u>, formalized version of a complaint.

- Level I – the first level of a formal grievance
- Level II – the first appeal level if dissatisfied with the Level I response and/or initial level of a staff conduct grievance.
- Level III – the second and final appeal level if dissatisfied with Level I and II responses. This level is reviewed outside the facility, mainly at Headquarters.

Offenders under the supervision of the Department of Corrections are afforded the right to file complaints and appeal their response.  Grievance topics may include:

- Staff Conduct
- Health Services
- Accounts
- Sentence Structure and Records
- Policy
- Prison Operations
- Food Services
- Religious Programs
- Facilities

There are five basic types of grievances.

| TYPE | DEFINITION |
|------|------------|
| *Routine* | A grievance against a policy or procedure, application of policy or procedure, lack of a policy or procedure, or the actions of another offender. |
| *Emergency* | Emergency grievances are complaints that involve a potentially serious threat to the life or health of an offender or staff member, relate to severe pain being suffered by the offender, or that involve a potential threat to the orderly operation of a facility, and its resolution would be too late if handled through routine administrative or grievance channels. |
| *Malicious* | A complaint or grievance in which the grievant causes or attempts to cause an innocent person to be penalized or proceeded against by lying to a staff member. |
| *Reprisal (Retaliation)* | A grievance alleging retaliation by a specific, <u>identified</u> staff member as a result of the grievant's good faith use of or good faith participation in the Offender Grievance Program. |
| *Staff Conduct* | A grievance against a specific, <u>identified</u> employee, contract staff, or volunteer under jurisdiction of the local facility or community corrections office, for alleged inappropriate demeanor, language or actions. |

# WHAT IS AN EMERGENCY GRIEVANCE?

## Introduction

Emergency grievances are complaints that involve a potentially serious threat to the life or health of an offender or staff member, relate to severe pain being suffered by the offender, or that involve a potential threat to the orderly operation of a facility, and its resolution would be too late if handled through routine administrative or grievance channels.

Health preserving medication or treatment is grievable as an emergency if the medication or treatment or lack of it causes severe pain to continue or presents an imminent threat to life or health.

## Special handling

Emergency grievances should be submitted to a staff person immediately after the incident/occurrence so it may be resolved in a timely manner. Check the "EMERGENCY Grievance" box at the top of the form.

Emergency grievances are handled by the Grievance Coordinator or their designee (most often, but not always, the Shift Lieutenant.) Any emergency grievance involving a medical issue should be evaluated by medical staff. Medical staff responding to the grievance should clearly address the medical issue on the form and legibly sign the form.

Upon completion of the local level of review and response, staff will forward all documents accepted and processed by a Grievance Coordinator as actual EMERGENCY GRIEVANCES to the Grievance Program Manager. The Grievance Program Manager will review all emergency grievances and forward any that might require additional review by the medical director or other executive staff.

**IMPORTANT:** You may appeal the decision that your complaint isn't an emergency to the Superintendent or his designee (usually the Duty Officer after hours.) just as you can if the grievance is processed as an emergency and you aren't satisfied with the Level I response.

Emergency grievances cannot be appealed to Level III.

## Not an emergency

Complaints that do not conform to the definition of an emergency grievance will be processed as routine, staff conduct, or reprisal complaints. The Grievance Coordinator/Designee will note the decision and reason to not treat the complaint as an emergency on the complaint form and return a copy to the grievant. The explanation should indicate any intended further processing of the complaint.

**IMPORTANT:** Offenders who declare false emergencies to staff may receive disciplinary action as authorized by the Superintendent.

## WHAT CAN I GRIEVE?

**Grievable Issues**

Only incidents, policies or practices which affect you personally and over which we (the Department) have jurisdiction can be grieved.

This includes actions by employees, contract staff, volunteers, and other offenders.

- You may grieve your place of confinement or conditions of supervision when it relates to policy, lack of policy, and/or not following policy;
- Department of Corrections policies, rules, and procedures;
- Application or lack of application of policies, rules, and procedures;
- Lack of policies, rules, or procedures that directly affect the living conditions of the offender;
- Actions of employees, contract staff, or volunteers over whom the facility or supervising office has jurisdiction;
- Actions of other offenders;
- Any form of sexual assault, sexual abuse and/or staff sexual misconduct.
- Retaliation against you for your good faith participation in the grievance program;
- Personal safety (housing, etc.);
- Physical plant conditions; and/or
- You may file a grievance on behalf of a visitor who is disabled and unable themselves to pursue the issue to the Superintendent by telephone or mail.  The visitor must be on your visit list and the grievance must focus solely on some aspect of that disability.
- Law firms and/or attorneys contracting with the Department of Corrections to provide legal assistance to offenders under the jurisdiction of the department may be grieved through the Offender Grievance Program. This stipulation may be noted in writing in the contract between the department and the contractor.

Contractors may establish an internal process to review and attempt to resolve complaints from offenders regarding the services of the contractor. When such a process exists, the grievance coordinator will <u>recommend</u> to a grievant that he/she use that forum prior to pursuing a grievance. The grievant may file a grievance if:

(1) the contractor's review process did not resolve the issue; or


(2) the grievant elects NOT to use the contractor's review process.

## WHAT IS CONSIDERED NOT GRIEVABLE?

Any issue that has a formal review and appeal process may not be grieved. You are encouraged to follow the correct review and appeal process to resolve those concerns.

**Non grievable issues**
You can not grieve the following:

- State and Federal law (Includes Washington Administrative Code (WAC) and Revised Code of Washington (RCW);

- Court-ordered pre-sentencing reports;

- Community Corrections Officer (CCO) recommendations to a DOC hearings officer and/or the Indeterminate Sentence Review Board;

- Special conditions imposed by a CCO in accordance with Department policy;

- The grievance coordinator's infracting an offender for submitting a threatening or malicious complaint, the latter coming only after authorization from the superintendent/work release supervisor;

- An alleged inadequate investigation conducted by the grievance coordinator/investigator. You may express your concerns in an appeal to the next level of review;

- An alleged inappropriate response to a grievance provided by the coordinator. You may express your concerns in an appeal to the next level of review;

- A complaint to a facility to which you have never been confined or assigned;

**Decisions**

- Court decisions

- Indeterminate Sentence Review Board decisions;

- Classification, disciplinary, community release referral decisions;

- End of Sentence Review Committee and risk management decisions, community custody violation hearings, or work release termination committee actions and decisions;

- Superintendent/Work Release Supervisor's decision to place you on grievance abuse status or authorize an infraction;

- Decisions made by Department of General Administration, Office of Risk Management regarding the disposition of Tort claims;

- Responses to grievances by investigator/designee;

- The grievance coordinator's decision that a complaint is not grievable. You may appeal that decision to the Grievance Program Manager;

- The grievance coordinator's decision regarding which type of formal grievance they will initiate. You may express your concerns in an appeal to the next level of review;

**Established appeal processes**

- Department-approved procedures which have established appeal processes:
  - Mail rejection
  - Visit denial
  - Property rejection
  - Public disclosure requests/denials for information
  - Infractions/disciplinary actions
  - Indeterminate Sentence Review Board (ISRB) decisions
  - Classification decisions (transfers, custody level)
  - Facility Risk Management Team (FRMT) decisions

**Outside jurisdiction**

- Complaints against actions of persons outside the jurisdiction of the facility/office;

- If you are under city or county jurisdiction, but housed in a state facility, you can not grieve issues that pertain to city/county policies, procedures and other matters not under the jurisdiction of the Department of Corrections.

- Department of Natural Resources (DNR) policies and procedures.

Grievance coordinators should refer DNR complaints to the local DNR administrator. Formal conduct grievances may be pursued against DNR staff only in the most flagrant cases such as alleged physical or sexual abuse or sexual harassment. Formal conduct grievances shall be investigated jointly by the DOC Superintendent and the DNR local administrator. Corrective actions against DNR staff are the responsibility of DNR administrators. Grievance coordinators will discuss the issue with the Grievance Program Manager prior to initiating any formal conduct grievance against DNR staff.

# IS MY GRIEVANCE KEPT CONFIDENTIAL?

## Introduction

Your complaints and grievances will not be discussed or shared with staff or offenders not actively involved in the resolution of the grievance *unless there are safety/security concerns or contains a threat.*

Disclosure of grievance documents, records, reports and other information are subject to the provisions of Chapter 137-08 WAC, Public Records - Disclosure.

## Secured Access

| IMPORTANT: Grievance Coordinators must keep local grievance documents in a locked area. |
| --- |

Institutions and work release facilities will provide conveniently located grievance boxes within which you may place your complaint. The grievance coordinator or his/her staff shall retain the only keys to such boxes. High security or high risk areas of a facility, i.e., segregation, intensive management, do not need to provide grievance boxes, but you will be given envelopes in which to forward your complaints to the grievance coordinator.

## Disclosure

You will not routinely be given investigative reports and written testimony from staff or other offenders as such documents often contain sensitive information regarding the security of the facility, disciplinary actions taken with staff, or statements by other offenders which, if known, could lead to retaliation.

Grievance documents will not be placed in your central file EXCEPT when you have been found guilty of filing a threatening or malicious grievance or for interfering with the duties of staff by submitting a large quantity of grievances and the documents are necessary to substantiate the information in the infraction report.

Staff members grieved for alleged misconduct or retaliation may read the initial grievance during the interview with the assigned investigator. They will not be provided copies of the grievance or the investigative report for their personal retention *but may be informed of the outcome of the grievance.*

Staff who is participating in the disposition of a grievance shall have access to records essential to the resolution of the grievance." DOC Policy 640.020, Offender Health Record Management, authorizes grievance investigators to access an offender's health care records as necessary to resolve that offender's health care grievance(s).  Such access does not require the offender's prior written approval.  To the extent possible, however, grievances about health care related issues should be investigated by health care staff who already have access to those records.

## ACCESSING THE GRIEVANCE POLICY, PROCEDURE AND FORMS

Grievance Coordinators will ensure complaint forms are available to all offenders under the supervision of the Department of Corrections regardless of status and provide assistance to offenders who are not capable of filling out forms for themselves.

Copies of the manual should be maintained in the law library and may be reviewed upon request of the grievance coordinator.

Each offender and new staff member will receive an orientation to the grievance procedure upon his/her arrival at the facility/local office. Please check the offender handbook at your facility as to where the grievance boxes are located.

## HOW DO I WRITE A GRIEVANCE?

You are responsible to provide in your written complaint all information relating to the issue being grieved. The grievance coordinator may assist you in preparing an accurate and inclusive complaint so that all information is available when attempting informal resolution or when preparing the formal grievance.

### What form do I use?

➢ Use Complaint Form, DOC 5-165 when submitting a complaint or an appeal.

> **IMPORTANT:** When complaint forms are not available, you may use 8 ½" x 11" writing paper for submitting your complaint. Complaints written on pieces of paper that are not 8 ½" x 11" will be returned unprocessed.

## How do I complete the form?

The entire complaint should be contained within the space allowed at the top of the prepared, formal grievance form.

| STEP | ACTION |
|---|---|
| 1. | **Write a simple, straight-forward statement of concern.**<br><br>Do not use legal language. While the Washington Administrative Code (WAC) may be referenced, citations of the Revised Code of Washington (RCW) provisions or case law are inappropriate.<br><br>    o  Identify the specific written policy or procedure being grieved;<br><br>    o  Identify the lack of a specific written policy or procedure;<br><br>Identify a local practice or application of a policy or procedure which you believe to not be in compliance with written policy. |
| 2. | **Identify how the issue or incident affects you personally.**<br><br>The grievance must be submitted by you on your own behalf. You may not submit a grievance on behalf of another offender. "Class action" grievances are not acceptable. |
| 3. | **Identify:**<br><br>    a. name of all individuals involved;<br><br>    b. date of incident;<br><br>    c. location where incident occurred; |

| STEP | ACTION |
|------|--------|
| 4. | **State what happened or was said;**<br><br>If you have physical evidence on which to base your grievance, you are required to produce that evidence.  If you wish to retain the physical evidence, the grievance coordinator *or* investigator must be allowed to photocopy it, take photographs of it, etc., so that the evidence may be evaluated at each grievance level.  Refusal to produce physical evidence, or refusal to let the grievance coordinator/investigator reproduce it in some fashion, may be grounds for administrative dismissal of the grievance.  The Grievance Investigator must document such refusals and forward the documentation to the local grievance coordinator. |
| 5. | **Identify the name(s) of witness(es).**<br><br>You are required to identify potential witnesses by name in your written complaints.  If the identity of witnesses becomes known after the complaint is submitted, you must forward a written listing of the names to the local grievance coordinator. If you allege to have witnesses to an incident but refuse to identify those witnesses, your grievance may be administratively withdrawn. |
| 6. | **You may include a suggested remedy; it is not required**. |
| 7. | **You must sign and date the form.**<br><br>Your signature is only required on the initial complaint or appeal unless you do not know how to write, or are physically unable to write. |

## HOW DO I FILE THE GRIEVANCE?

> **IMPORTANT:** You must submit the form to the Grievance Coordinator, who will return a copy to you showing the coordinator's response and the assigned grievance Log ID number.

If you are claiming an emergency, give the complaint form to a grievance coordinator/designee immediately.

## Prison, Pre-Release or Work Release

If you are in prison, pre-release or work release, you must submit form DOC 05-165, Offender Complaint, to the institution's grievance coordinator by placing it in the grievance box or sealing it in an envelope addressed to the grievance coordinator/program specialist and send via the facility mail system if a grievance box is not available. A copy will be returned showing the status of your complaint and the assigned grievance log ID number.

If you have been transferred and wish to file an offender complaint or appeal with the grievance department at the old facility, you may submit your complaint to your new facility's grievance coordinator who will forward it to the old facility's grievance department. These should only be for property or offender accounting issues.

## Community Supervision

If you are on community supervision you must submit form DOC 05-165 Offender Complaint (available at the local community corrections office) and mail the form to:

Grievance Program Manager
Grievance Program Office
Department of Corrections
PO Box 41129
Tumwater, WA 98501-1129

> **IMPORTANT:** You are expected to prioritize your grievances and to seek informal resolution to your concerns through regular administrative channels prior to utilizing the grievance procedure.

## WHY WOULD MY GRIEVANCE BE RETURNED?

**For rewrite:**

Your complaint form will be returned to you unprocessed with a notation to rewrite it when:

- forms are available and the complaint is written on something other than the form. If forms are not available you must write the complaint on 8½" x 11" paper or the complaint will be returned to you.

- you have not written a simple, straight-forward statement of concern.

- your complaint contains excessive citations of law or legal terminology.

- your complaint contains profane language, except when used as a direct quote.

- similar complaints filed separately and regarding the <u>same</u> issue or incident will be assigned one Log ID number and a copy of the complaint forms sent back to you with instructions to rewrite them into <u>one</u> simple, clear, and concise complaint.

  Where a problem has several aspects, coordinators may assist you in stating the complaint in a general way that encompasses all.

**IMPORTANT:** The request for rewriting is between the coordinator and you and can not be appealed to the Grievance Program Manager.

**For additional information:**

Complaints may be returned for additional information. If the needed information is minimal, such as just a name, or date, or time, the information may be solicited during the interview in which the formal grievance is initiated and added to the formal grievance.

**Non-grievable:** Complaints falling under the listing of non-grievable issues will be returned so noted.

**IMPORTANT:** Offenders may not have more than a combined total of 5 formal grievance and/or appeals in process at any one time at level I, II, III

**Quanity:** Offenders may not submit more than 5 complaints during a calendar week.

**IMPORTANT:** Offenders in Segregation and IMU will have their formal grievances processed without their signature.

## WHAT HAPPENS AFTER I FILE THE GRIEVANCE?

### Determination and finalization

The grievance coordinator/program specialist will determine whether your concerns can be aggrieved and whether it is routine, emergency, staff conduct or reprisal (retaliatory) in nature.

The grievance coordinator/office staff will type the complaint on DOC 05-166 Level I-Initial Grievance.

Formal, typed grievances and appeals will be accurate reproductions of the approved, handwritten complaints/appeals you submitted, although spelling and grammatical errors may be corrected if the corrections do not change the meaning or intent of your statement.

> **IMPORTANT:** Concerns about typing errors in formal grievances/appeals should be directed to the local Grievance Coordinator, not the Grievance Program Manager, by sending a KITE identifying the corrections to be made. Include the Log ID number.

### Levels of Review

You will be informed in writing of the action *at each level* and *be* given an opportunity to accept or appeal the decision.

> **Offender Complaint** = Review of the complaint by the Grievance Coordinator.

> **Level I** = Attempt to resolve grievance by the Grievance Coordinator.

> **Level II** = Review by Superintendent/facility supervisor.

> **Level III** = Review by Deputy Secretary/designee.

**Staff misconduct** = Grievances which are accepted as Staff Conduct will be typed on special forms by the Grievance Coordinator and sent directly to the Superintendent/designee for review and investigation as a Level II Grievance. That response may be appealed through the Grievance Program Specialist to the Deputy Secretary/Designee at Level III. The Level III response is the Department's final response.

**Emergency grievances** = Attempt to resolve the grievance by the grievance coordinator at Level I.

If the response is appealed, the grievance is forwarded to the superintendent/facility supervisor.

Emergency grievance documents will be forwarded to the Grievance Program Manager for further review upon completion at each local level of review.

### Non-grievable issues through appeal

The Grievance Program Manager/designee shall automatically review all complaints deemed not grievable by local grievance coordinators. The Grievance Program Manager can reverse a decision of non-grievability and cause the local grievance coordinator to initiate a formal grievance.

You can also request a review of a decision of non-grievability directly to the Grievance Program Manager. Such requests should contain your committed name, DOC number, mailing address, and the Log ID number of the complaint you want reviewed. The review will determine grievability only, not the merits of the issue.

**Investigation**

The grievance coordinator or assigned investigator will:

- review assigned investigator's instructions;
- review local policies and procedures;
- review DOC policies, WAC, RCW as necessary;
- review inventories, daily logs, medical records, etc, as necessary;
- interview resource staff (doctors, supervisors, chaplain, etc.) for additional perspective, as necessary;
- interview grievant and/or witnesses as appropriate. Written statements may be accepted.

If you refuse to be interviewed by a grievance investigator or to actively participate in such an interview, that grievance or appeal may be administratively withdrawn. The grievance investigator will document such refusals and forward the documentation to the local grievance coordinator.

If a federal court inquires as to whether an offender has exhausted administration remedies through the grievance procedure, and the offender has refused to be interviewed, refused to provide physical evidence and/or refused to divulge the names of potential witnesses, a negative response to the court will be issued.

> **IMPORTANT:** The grievance coordinator must ensure that each complaint is investigated and documented to the extent necessary to fully understand the problem and to prepare an accurate, fair response.

**Report elements**

The Investigator prepares a <u>written report</u> containing the following elements:

1. Name of investigator.
2. Name(s) of person(s) interviewed and date(s) time(s), and location(s) of interviews.
3. Synopsis of interview(s).
4. Citation of documents consulted (policy number, WAC, RCW, etc.).
5. Evidence found to substantiate or refute the grievant's allegations.
6. Conclusions of the investigation.
7. Suggested response as appropriate. Concurring with prior response is acceptable if the response fully reflects the reviewer's reasoning.

**Response elements**

The grievance will be answered in writing on the appropriate form at each level of review. The response will include:

- a clear statement of findings
- reasons why a decision was reached
- statement that grievance is entitled to further review

The response:

- addresses the issue grieved.
- may give name of the assigned investigator (if other than the grievance coordinator).
- may specify names of witnesses interviewed and/or resource staff consulted (sources of confidential information will not be disclosed).
- cites policy, WAC, RCW as necessary.
- specifies evidence found or notes inability to find evidence.
- gives the conclusion/decision reached by the coordinator or investigator.
- gives the reason(s) for the decision reached.

> **IMPORTANT:** Staff conduct grievance investigation reports should note what corrective action has been/will be taken to resolve the issue and provide a completion date for that action, when known.

**Finalize**

The coordinator types the response, signs and dates the response ensuring that copies of relevant documents are attached to the facility file copy of the grievance and to the copy being sent to the Grievance Program Office.

## WHAT IF I TRANSFER OR AM RELEASED FROM SUPERVISION?

If the grievance was started prior to your transfer or date of release, the grievance process remains at the facility/local office.

If your property or funds did not get transferred with you, you may submit (within 90 days from the date of transfer) a new complaint against the facility from which you transferred.

In both of these instances, an in-person interview is not guaranteed during the investigation. A telephone interview may be arranged when necessary and practical.

A complaint will not be accepted and processed at a facility/local office to which you have never been confined/assigned. Instead, the complaint will be treated as correspondence.

IMPORTANT: Grievance coordinators are authorized to waive the normal twenty (20) day filing timeframe in which to submit a complaint if the offender presents documentation of his/her attempts to resolve a conflict.

Complaints accepted and processed by grievance staff as legitimate emergency grievances as defined in this manual shall not be considered when making a decision to either infract or place an offender on grievance abuse status.

Such an infraction must be authorized by the superintendent/work release supervisor prior to its being written and served and must be based on objective evidence provided by grievance staff.

IMPORTANT: Staff will not use the grievance system as a disciplinary procedure.

# WHAT ARE THE GRIEVANCE PROCESS TIMEFRAMES?

## Introduction

Specific timeframes are set at each level to ensure prompt response to complaints/grievances.

Grievances should be processed within 90 working days from the date the initial grievance was signed and dated by the coordinator to the Level III response date. The process may take longer than 90 days in cases where rewrites and/or mailings are involved.

> **IMPORTANT:** It is the responsibility of both the offender and staff to ensure that submission of, and response to, complaints and grievances occur within the established timeframes.

## Regular Grievance Timeframes

| Action | Timeframe |
| --- | --- |
| Offender complaint submitted | Within 20 working days of the date of the incident. This timeframe does not apply to complaints against a specific written policy or procedure. |
| Initial response | Within 5 working days of the date of receipt. |
| Offender returns rewrite or provides additional information if required. | Within 5 working days of receipt of grievance coordinator's response. |
| Initial grievance response | Within 10 working days of the date the formal grievance was initiated to the date of the response at Level I; OR Within 20 working days of the date formal grievance initiated to date of response at Level II for conduct/reprisal grievance. |
| Offender's appeal to Level II | Within 5 working days of receipt of Level I response. |
| Superintendent/facility supervisor Level II response | Within 20 working days of date the formal appeal is initiated by the grievance coordinator to the date of response. |
| Offender's appeal to Level III | Within 5 working days of receipt of Level II response. |
| Level III response | Within 20 working days of the date the formal appeal is received at the Grievance Program Office to the date of the response. |

## Emergency Grievance Timeframes

| Action | Timeframe |
|---|---|
| Offender completes DOC 05-165 Offender Complaint and notifies staff of emergency. Attempts informal resolution. | Immediate |
| If not informally resolved, staff phones grievance coordinator/*designee* and reads complaint. | Within 30 minutes of being informed of the emergency. |
| If deemed an emergency, staff forwards the complaint to the grievance coordinator/*designee*. | Within 30 minutes of being deemed an emergency. |
| Coordinator attempts to resolve the issue informally or formally at Level I and responds in writing with a copy to the offender. | Within 8 hours (one work shift) |
| Offender submits appeal to coordinator | Within 24 hours of receiving written response |
| Coordinator prepares Level II appeal and submits to superintendent/facility supervisor | Within 2 hours of receipt of handwritten appeal |
| Superintendent/facility supervisor investigates and responds in writing | Within 24 hours of receipt of Level II appeal. |

### Legal Aid

Grievance coordinators are authorized to waive the normal twenty (20) day filing timeframe in which to submit a complaint if the offender presents documentation of his/her attempts to resolve a conflict through a contractor's review process <u>and</u> allows the coordinator to photocopy the documentation for the grievance record.

### Correspondence

There is no timeframe established within which the Grievance Program Manager/designee must respond to offender correspondence mailed to the Grievance Program Office. The Grievance Coordinator will attempt to respond within thirty (30) working days from date of receipt. If a response can not be made in that time span, Grievance Program Office staff will notify the offender that his/her correspondence has been received and will be responded to at a later date.

## WHAT IF MORE TIME IS NEEDED?

**Timeframe not met**

When a timeframe cannot be met at any level, the grievance coordinator may:

1. send you a Notification of Time Extension DOC 05-171 advising you of the number of days added and the new due date and the reason for the extension;
   OR

2. appeal the grievance automatically to the next level of review.  However, no grievance will be automatically appealed to Level III unless at least one local investigation has been completed and at least one response addressing your issue(s) has been provided at the local level.

**Time extensions**

When a time extension is necessary, the investigation/response should be completed within no more than a ten (10) working day extension, although grievance coordinators can authorize extensions up to thirty (30) working days for difficult cases.

When extensions exceeding thirty (30) working days are deemed necessary by a grievance coordinator, he/she must first discuss the need with the Grievance Program Manager/ designee prior to issuing the Notification of Time Extension, DOC 05-171.

Grievance coordinators will forward copies of all Notification of Time Extension, DOC 05-171, forms issued locally to the Grievance Program Office.

> **IMPORTANT:**  No more than one time extension should be taken at any given level.

**Abuse of extensions**

Excessive use of time extension notifications by a local facility may be cause for audits by the Grievance Program Office staff, Regional Administrators, Superintendents/Facility Supervisors or other entities as necessary to determine the underlying cause. The authority to issue time extension notifications shall not be abused at any grievance level.

## HOW IS A GRIEVANCE RESOLVED?

**Actively participate**

You are expected to actively participate in seeking the resolution to your own grievances.

- First by informal resolution attempts;

    Discussing an issue with staff will often clear up any misunderstandings. You should first attempt to speak directly with the person aware of or directly involved with the incident.

- Filing complaints and appeals timely; and

- Actively participating in the interview.

**Remedies available**

Since its inception in 1980, the Department of Corrections Offender Grievance Program has been, with certain exception, an open forum through which offenders can seek administrative remedies to their problems.

Administrative remedies available through the Grievance Program include:

    a. *possible* restitution of property or funds;

    b. correction of records;

    c. administrative actions;

    d. agreement by department officials to remedy an objectionable condition within a reasonable time; and/or

    e. a change in a local or department policy or practice.

## HOW DO I APPEAL THE OUTCOME OF MY GRIEVANCE?

**Not satisfied**

- If you are not satisfied with the Level I response, you may appeal to the grievance coordinator/specialist.

  Complete DOC 05-165 within established timeframes. Be sure to check the "Appeal to next level" box and include the log ID number.

- If you are still not satisfied, you may appeal to Level III.

  Complete DOC 05-165 as above, within the established timeframes, and forward to the Grievance Program Manager through your grievance coordinator.

> **IMPORTANT: Appeals must address the basic issue of the initial grievance.** New or additional information may be given regarding the original issue but new issues may not be added.

You should state why the previous response was unacceptable, thereby establishing a rationale for the appeal and the basis for a reinvestigation. General statements such as "I appeal" or "Appeal to next level" or an exact restatement of the original grievance are acceptable

You must sign and date the handwritten appeal.

**Review**

The reviewing authority at each level may conduct reinvestigations and interviews as necessary to ascertain the facts of the matter grieved. The Deputy Secretary or his/her designee is the final appeal authority for all grievances.

**Appeal response elements**

The appeal response contains the following elements:

- addresses the original issue grieved;
- may specify name(s) of witness(es) interviewed and/or resource staff consulted (sources of confidential information will not be disclosed). The Level II response will note if you were interviewed and by whom.
- cites policy, WAC, RCW as necessary.
- specifies evidence found or notes inability to find evidence.
- includes copies of relevant and newly discovered documents to be maintained with the grievance packet.
- gives the decision reached by the reviewing authority.
- gives the reason(s) for the decision reached.
- notes what corrective action has been/will be taken to resolve the issue and provides a completion date for that action, when known.
- When appropriate, the reviewing authority may simply concur with decisions and/or actions taken at lower levels of review. The response is signed and dated by the reviewing authority.

## CAN I FILE A TORT CLAIM WHILE A GRIEVANCE IS IN PROCESS?

### Introduction

You may file a tort claim and a grievance regarding the issues at the same time.  However, you are encouraged to seek remedy through the grievance system levels in an effort to resolve complaints (especially those regarding personal property) prior to initiating a Tort claim.

### Investigation

The Grievance Coordinator and local Tort Claim Manager should coordinate related investigations to avoid duplication of effort.

All complaints that allege the State's responsibility for the loss, confiscation, damage or destruction of personal property will be thoroughly investigated and documented. Subsequent grievance levels shall reinvestigate and document such claims as necessary to fully ascertain the facts.

When an investigation fails to substantiate your allegations regarding personal property, the response should cite the evidence or lack of evidence used to formulate the decision and recommend that you appeal to the next level if there is intent to file a tort claim.

### Document requests

You, the Department of Corrections, the Office of Risk Management, and the Office of the Attorney General may use grievance documents in the investigation and resolution of tort claims.

Requests for grievance documents to be used in the processing of tort claims by department staff, the Office of Risk Management, or by the Office of the Attorney General should be made in writing or e-mailed to the Grievance Program Manager, not to the local grievance coordinator.

## WHAT IF MY GRIEVANCE INVOLVES SEXUAL ASSAULT, SEXUAL ABUSE, RAPE AND/OR STAFF SEXUAL MISCONDUCT?

The Department maintains a zero tolerance policy with regard to sexual assault, sexual abuse, and/or rape of offenders and staff sexual misconduct.

Grievances alleging any form of sexual assault, sexual abuse, and/or staff sexual misconduct will be forwarded immediately to the Appointing Authority. These will then be forwarded to the Prison Rape Elimination Act (PREA) Administrator for review and investigation assignment.

Substantiated allegations of sexual assault and sexual abuse will be referred to local law enforcement for possible prosecution and the Department will impose disciplinary sanctions for such conduct.

**Other ways to report**

- Confidential Hot Line – Toll Free  800-586-9431

  You will get a recorded message and need to leave all the information you can or are comfortable giving. All information will be kept in strict confidence.

  The toll-free number will be posted next to or on all offender telephones at prison and work release facilities.

  Calls to the hotline will not be recorded or monitored at the facility.

  Calls to the hotline are recorded at DOC Headquarters and messages are reviewed Monday through Friday, 8 am- 5 pm by staff of the Special Investigations Unit.

- Verbal Complaint – talk to any staff member you feel comfortable with. This can be a teacher, nurse, counselor, chaplain, unit officer, or CCO.

- Written Complaint – Send a kite, emergency grievance, offender grievance, staff conduct grievance, or write a note to staff or administrators.

Letters directed to state attorneys general, governors, members of the state legislature, law enforcement officers in their official capacity, and/or the PREA Unit at Headquarters will be handled as legal mail per the Mail for Offenders policy.

## HOW ARE ALLEGATIONS OF MISCONDUCT OR RETALIATION INVESTIGATED?

The appropriate institution Superintendent, work release facility supervisor, or Regional Administrator will thoroughly investigate any complaint alleging retaliation or misconduct.

**Assigned investigator**
The investigator is assigned by the superintendent, work release supervisor, field administrator, or regional administrator. Grievance coordinators will not investigate Staff Conduct or Reprisal (Retaliation) grievances.

To the extent possible, grievance investigations should be assigned to that person with supervisory authority over the person(s) being grieved or the area of the facility being grieved. This ensures that the supervisor is aware of the grievance and can recommend corrective action(s) to the appropriate entity as necessary.

**Confidential**

Specific information regarding the action taken or to be taken against staff should not be divulged in the response as it is confidential and should remain between the appropriate administrators and the staff involved.

> **IMPORTANT:** If misconduct is substantiated, it should be noted in the administrator's response to the grievant, as well as the fact that corrective action has been/will be taken. The form or extent of that corrective action, however, is privileged information and will not be revealed to the grievant.

**Retaliation**
Retaliation against any individual because of his/her involvement in the reporting or investigation of a complaint is prohibited. Retaliation will be treated as a separate actionable offense subject to administrative sanctions and possible referral for criminal prosecution.

## CAN I BE DISCIPLINED FOR FILING A GRIEVANCE(S)?

**Introduction**

The vast majority of offenders who have used the program have done so in a responsible and mature manner.  A comparatively small number of offenders, however, have elected to abuse the Offender Grievance Program by submitting numerous grievances or by submitting grievances of a malicious or threatening nature.  The submission of many grievances by a few makes it difficult to conduct quality investigations and provide meaningful responses for all.

**Abuse by content**

<u>MALICIOUS GRIEVANCE</u>:

The grievance coordinator shall refer any grievance that contains a <u>direct</u> threat to the life or safety of a person to the disciplinary process for review.

The institution superintendent, work release facility supervisor, or regional administrator may initiate corrective action against a grievant if investigation deems a complaint or grievance is malicious in nature or that the grievant attempted to cause or caused an innocent person to be penalized or proceeded against by lying to a staff member.

### General Infraction

The first time you submit a malicious grievance, the superintendent/work release supervisor may authorize that a general infraction be written and served.  If found guilty of the infraction and if that finding is upheld if you appeal the infraction, one part of the sanction is a written warning that subsequent malicious grievances by the individual may result in serious infractions.

### Serious Infraction

If you continue to submit malicious grievances, the superintendent/work release supervisor may authorize that a serious infraction be written and served.

Infractions for malicious grievances should only be issued for flagrant violations.  The superintendent/work release supervisor must pre-approve any infraction for a malicious grievance before it is written and served.

## THREATENING GRIEVANCE

If you submit a complaint, grievance, or appeal which contains a <u>direct</u> threat to the life or safety of any person, you will receive an infraction.

Per WAC 137-28, any grievance staff finding a direct threat to the life or safety of any person in a complaint, grievance, or appeal shall initiate the disciplinary process.  Because of the possible urgency of the matter, pre-approval of the infraction by the superintendent/work release supervisor is not required.

Complaints containing direct threats from offenders on community supervision must be referred to the supervising community corrections officer.

**Abuse by Quantity**

## Over the limit

You must not submit more than five (5) new complaints per calendar week and are limited to five (5) ACTIVE grievances. If you deliberately flood the grievance system with many and repeat complaints, you may receive corrective action.

If you withdraw five (5) or more formal grievances/appeals within one calendar year in order to initiate new formal grievances, you may be subject to an infraction for interfering with the duties of staff.

### First violation

The grievance coordinator will issue a written warning documenting the abuse and stating that subsequent violations may result in you either being placed on grievance abuse status or issued an infraction for interfering with the duties of staff.

### Second and subsequent violations

The grievance coordinator may submit objective documentation to the superintendent/ work release supervisor and request that either you be placed on grievance abuse status or infracted for interfering with the duties of staff.

## Grievance Abuse Status

If the superintendent/work release supervisor approves placing you on abuse status, he/ she will advise you in writing and inform you that the status will be in effect for ninety (90) working days from the date of the superintendent/work release supervisor's memo.

All new complaints received during a calendar week which are over the authorized limit of five (5) per week will automatically be deemed not grievable and a copy of the form will be returned to you with a written explanation as to why the grievances were rejected. Such complaints will be encoded and entered into the management information system as documentation of the abuse.

The grievance coordinator will forward to the Grievance Program Manager a copy of the approving memo from the superintendent/work release supervisor along with copies of the documentation utilized by the administrator in reaching that decision.

The Grievance Program Manger will update the appropriate management information system grievance screen and route the packet to the appropriate regional administrator, who may concur with or overturn the superintendent/work release supervisor's decision.

| **IMPORTANT:** Placement on grievance abuse status is not grievable. |
| --- |

**Infraction:** The superintendent/work release supervisor may choose to authorize an infraction for interfering with the duties of staff in lieu of placing you on abuse status. This decision will be made utilizing objective documentation supplied by the grievance coordinator and cannot be grieved or appealed to the Grievance Program Manager or DOC administrators. If found guilty and that decision is upheld on appeal, the grievance coordinator shall make the appropriate notation in the infraction field on the appropriate management information system screen.

Complaints accepted and processed by grievance staff as legitimate emergency grievances as defined in this manual shall not be considered when making a decision to either infract or place an offender on grievance abuse status.

Such an infraction must be authorized by the superintendent/work release supervisor prior to its being written and served and must be based on objective evidence provided by grievance staff.

> **IMPORTANT:**  Staff will not use the grievance system as a disciplinary procedure.

## HOW CAN I MAKE SUGGESTIONS/CHANGES TO THE OFFENDER GRIEVANCE PROGRAM?

The grievance coordinator will post notices in <u>January</u>, <u>April</u>, <u>July</u>, and <u>October</u> soliciting comments about the grievance procedure from staff and offenders.  The Grievance Coordinator will forward comments received to the Superintendent, with copies to the Grievance Program Manager who will consider whether changes to local or Department processes are necessary.

You may also write the Grievance Program Manager with changes/suggestions to the Offender Grievance Program policies and procedures.  Be sure to clearly state and describe your changes/suggestions.

# HOW ARE GRIEVANCE DOCUMENTS MAINTAINED, ARCHIVED/STORED AND DISPOSED?

## Maintenance

Grievance coordinators will maintain grievance documents locally for the present calendar year plus the previous two (2) calendar years. The Grievance Program Office will maintain all grievance documents for six (6) consecutive years from the initial complaint date. The master grievance file is that file contained in the Department of Corrections' Liberty™ database.

## Archived

Grievance staff will archive grievance documents in accordance with the approved agency retention schedule.

The Grievance Program Office will archive or store master grievance files concerning select issues, such as exposure to asbestos, for the period of time established by law or Washington Administrative Code.

## Disposal

Staff will dispose of local grievance documents only after receipt of written authorization and direction from the DOC Grievance Program Manager.

Staff will destroy duplicate records according to State and Federal law.

## WHAT ABOUT LITIGATION?

The intent of Offender Grievance  is to assist offenders in resolving issues at the lowest level of the process to reduce the burden of offender litigation on the courts.

### REQUESTS FOR CLIENT ADVICE

The Grievance Program Manager can initiate a request for client advice when a grievance at any level pertains to a potentially sensitive legal issue.

The Grievance Program Manager makes such requests in writing and outlines the issues involved, questions to be answered, and establishes a response due date.  They also provide pertinent grievance documents with the request.

The superintendent, work release supervisor or their designee can initiate local requests for client advice that involve grievances.  They should provide a copy of the request to the Grievance Program Manager in order to avoid duplicate requests.  They should also forward a copy of the response from the Assistant Attorney General to the Grievance Program Manager when complete.

ASSISTANT ATTORNEY GENERAL REQUESTS FOR GRIEVANCE INFORMATION

When the Department of Corrections receives notice of offender litigation filed against the agency, staff must assist Assistant Attorney General Divisions in preparing the department's legal defense.

Assistant Attorney General (AAG) Divisions can request that the Grievance Program Office staff provide copies of grievance documents or other information essential to a case.  AAG staff can make initial requests by telephone, followed by a written request and accompanied by a copy of the litigation if necessary.  The request should specify the documents needed and establish a due date.

AAG staff must send all requests to the Grievance Program Manager (not the local grievance coordinator), who will review the request and coordinate the gathering of grievance information.  If the request is unduly burdensome on Grievance Program Office staff time, the Grievance Program Manager will discuss the matter and possible relief with the Assistant Attorney General assigned to the case.

## WHAT ARE THE GRIEVANCE PROGRAM STAFF ROLES AND RESPONSIBILITIES?

**Grievance Program Manager**

- Establish dates for development and implementation of each local grievance system.

- Determine specific responsibility of the facility superintendent/supervisor in the implementation and operation of the grievance system.

- Provide specific direction for the facility superintendent/supervisor in the development of local written grievance procedures.

- Ensure that the facility superintendent/supervisor designates a staff person as grievance coordinator for the facility.

- Develop and distribute a standard grievance form for each level of review.

- Establish and monitor a management information system for each facility.

- Provide training for grievance coordinators in grievance policy, procedure, and data entry into management information system.

- Ensure statistical reports are available to administrators that show for a given timeframe the number of grievances filed, types of grievances submitted, level of disposition, type of disposition and issues grieved.

- Review local grievance procedures for compliance with department standards.

- Transmit documents, decisions, recommendations, and other grievance-related material to all facilities.

- Ensure that each local grievance procedure is evaluated as needed.

- Establish a system by which operations within the Grievance Program Office may be audited at least biennially.

- Request client advice from the Assistant Attorney General Division on legally sensitive issues.

- Ensure distribution of the DOC Grievance Manual to appropriate department administrators.

- Monitor availability of the DOC Grievance Manual at each site in designated locations for reference by offenders and staff.

**Superintendent/Work Release Supervisor**

- Appoint the Grievance Coordinator who, while in the performance of their grievance duties, reports directly to the Superintendent or work release supervisor.

- Designate staff members to serve as alternate Grievance Coordinator during prolonged absences (annual leave, sick leave, etc.) of the regularly assigned coordinator.

- Designate certain staff members to process emergency grievances during the normal off-duty hours (at night, weekends, etc.) of the Grievance Coordinator.

- Ensure that the Grievance Coordinator, alternate Grievance Coordinator(s), staff designated to process emergency grievances, assigned investigators, and staff appointed to grievance committees receive adequate training.

- Ensure that necessary clerical support is available to the Grievance Coordinator.
- Ensure that the Grievance Coordinator, alternate Grievance Coordinator(s) and, where appropriate, grievance clerical support staff have the proper identification codes to access management information system grievance screens and reports.

**Grievance Coordinator**

- Coordinate operation of the local grievance procedure and it's compliance with DOC Policy 550.100 and this manual.
- Must ensure that competent staff investigate and document each complaint to the extent necessary to understand the problem fully and to prepare an accurate and fair response.
- Consult with appropriate staff when change appears warranted in policies, procedures, and practices and submit recommendations to the proper authority.
- Distribute complaint forms.
- Type grievances on proper forms.
- Coordinate investigations.
- Adhere to established timeframes.
- Ensure confidentiality of grievance records.
- Provide written and oral grievance orientation to offenders and staff.
- Generate and distribute required reports.

**Community Corrections Officer/Grievance Program Specialist**

- Ensure offenders are provided with an introduction to the grievance procedures upon intake.
- Receive all complaints and appeals directly from offenders or those forwarded by field office staff.
- Determine grievability and type of grievance.
- Code the complaint and ensure data entry into the management information system.
- Ensure processing of formal grievance and paperwork.
- Coordinate the investigation and response with field staff.
- Respond to routine grievances at Level I.
- Refer Staff Conduct/Reprisal (Retaliation) grievances directly to the field administrator.

## DEFINITIONS

**ABUSE OF THE GRIEVANCE PROGRAM:** A grievant's deliberate flooding of the grievance system with many and repeat complaints and/or continuing through the entire appeal process with grievances that were resolved in the grievant's favor at a lower level. A determination of abuse will be based on the <u>quantity</u> of complaints submitted, not the quality of individual complaints except those of a threatening or malicious nature. Specific, time-limited restrictions may be applied in cases of abuse. Infractions may also be issued for abuse of the grievance mechanism.

**APPEAL:** Submission of the formal grievance, through the grievance coordinator, to a higher level of review when the grievant is dissatisfied with a response at a lower level.

**APPEAL OF NONGRIEVABLE ISSUES:** A coordinator's decision that a complaint is not grievable may be appealed to the Grievance Program Manager/designee for review. The review will determine grievability <u>only,</u> not the merits of the issue. The Grievance Program Manager/designee may uphold the coordinator's decision or reverse it, causing a formal grievance to be initiated.

**COMMUNITY CORRECTIONS OFFICE:** A local corrections office from which offenders in the area on community supervision status are supervised.

**COMPLAINT:** Written notification from the grievant to the grievance coordinator that details a specific issue or action affecting the grievant personally and about which the grievant desires to file a formal grievance.

**EMERGENCY GRIEVANCE:** Emergency grievances are complaints that involve a potentially serious threat to the life or health of an offender or staff member, relate to severe pain being suffered by the offender, or that involve a potential threat to the orderly operation of a facility, and its resolution would be too late if handled through routine administrative or grievance channels.

**FACILITY:** A prison, pre-release facility, or work release where convicted felons are housed by the Department of Corrections.

**FACILITY SUPERVISOR:** A person directly responsible to over-see the operations of a work release facility.

**FIELD ADMINISTRATOR:** A person directly responsible to over-see the operations of several local community corrections offices.

**GRIEVANCE:** A <u>typed</u>, formalized version of a complaint that has been signed and dated by the grievant and the grievance coordinator. Official grievance timeframes commence on the date the initial grievance is signed by the grievance coordinator.

Level I – the first level of a formal grievance

Level II – the first appeal level if dissatisfied with the Level I response and initial.

Level III – the second and final appeal level if dissatisfied with Level I and II responses.

**GRIEVANCE COORDINATOR:** Appointed by and responsible to the appropriate Superintendent or work release supervisor for the operation of the local grievance procedure and for its compliance with DOC Policy 550.100 and the departmental Grievance Procedure Manual.

**GRIEVANCE PROGRAM MANAGER:** A person under the supervision of the Deputy Director Prisons Command A who has statewide responsibility for the Offender Grievance Program.

**GRIEVANT:** An aggrieved offender.

**LOG ID NUMBER:** Also called a grievance number. A unique, seven-digit number assigned to a specific complaint and subsequent paperwork associated with that complaint. The first two digits of the number reflect the year in which the complaint was received.

**MALICIOUS GRIEVANCE:** A complaint or grievance in which the grievant causes or attempts to cause an innocent person to be penalized or proceeded against by lying to a staff member.

**MANAGEMENT INFORMATION SYSTEM (MIS):** The department's computerized system written specifically by department staff for the electronic storage and retrieval of offender information.

**OFFENDER:** An individual confined in a prison, pre-release, or work release facility, or who is on community supervision.

**OFFENDER GRIEVANCE PROGRAM:** An internal grievance and appeal system that promotes proper and effective communication between staff and offenders in an effort to resolve issues at the lowest possible level.

**RCW:** Revised Code of Washington.

**REPRISAL (RETALIATION) GRIEVANCE:** A grievance alleging retaliation by a specific, <u>identified</u> staff member as a result of the grievant's good faith use of or good faith participation in the Offender Grievance Program.

**ROUTINE GRIEVANCE:** A grievance against a policy or procedure, application of policy or procedure, lack of a policy or procedure, or the actions of another offender.

**STAFF:** Employees of the Department of Corrections, volunteers, and providers of contracted services over which the department has jurisdiction.

**STAFF CONDUCT GRIEVANCE:** A grievance against a specific, <u>identified</u> employee, contract staff, or volunteer under jurisdiction of the local facility or community corrections office, for alleged inappropriate demeanor, language or actions.

**SUPERINTENDENT:** A person directly responsible to over-see the operations of a prison or pre-release facility.

**THREATENING GRIEVANCE:** A complaint, grievance or appeal which contains a <u>direct</u> threat to the life or safety of any person or to the orderly operation of a facility.

**WAC:** Washington Administrative Code.

## GRIEVANCE FORMS

| | |
|---|---|
| Offender Complaint Form | DOC 05-165 |
| Offender Complaint Form (Spanish) | DOC 05-165S |
| Level I – Initial Grievance Form | DOC 05-166 |
| Appeal to Level II Form | DOC 05-168 |
| Appeal to Level III Form | DOC 05-169 |
| Staff Conduct Grievance Form | DOC 05-170 |
| Notification of Time Extension Form | DOC 05-171 |
| Assigned Investigator's Instructions Form | DOC 05-311 |
| Notification of Staff Conduct/Reprisal Grievance | DOC 20-303 |