UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN THOMAS ENTLER, )
          Plaintiff, )   No. CV-12-5141-JPH
   vs. )
           )   **ORDER DENYING MOTION FOR RECONSIDERATION**
CHRISTINE GREGOIRE, et al., )
          Defendants. )

**BEFORE THE COURT** is the Plaintiff's Motion For Reconsideration (ECF No. 65). The motion is heard without oral argument at the court's discretion pursuant to LR 7.1(h)(3)(B)(iii).

Plaintiff asks the court to reconsider its October 15, 2013 "Order Adopting Report And Recommendation" of Magistrate Judge Hutton (ECF No. 61). While that order considered the objections to the report and recommendation filed by Plaintiff (ECF No. 59), it did not consider the objections filed by Defendants (ECF No. 60). Recognizing such, the Plaintiff has, along with his Motion For Reconsideration, filed a response to the Defendant's objections to the Report and Recommendation (ECF No. 66). The undersigned has considered the Defendant's objections in ruling on the Plaintiff's Motion For Reconsideration. The undersigned has also considered Plaintiff's reply filed in conjunction with his Motion For Reconsideration.

**ORDER DENYING MOTION FOR RECONSIDERATION-**    **1**

That reply (ECF No. 76) was filed on December 16, 2013.

Magistrate Judge Hutton found that Plaintiff's sending of kites amounted to an "act of filing informal 'grievance' materials" which constitutes "protected conduct for the purposes of [Plaintiff's] retaliation claim." (ECF No. 57 at pp. 5-7). It is apparent to the undersigned, however, that Plaintiff's kites were not part of the grievance process. A kite is not an informal grievance which is "filed." A kite may be part of an "informal resolution" which precedes the grievance process, but the grievance process only commences at "Level 1" when a formal grievance- "a <u>typed</u>, formalized version of a complaint"- is filed with the grievance coordinator. (ECF No. 5-2 at pp. 40-41)(Emphasis in original). Plaintiff was not required to send kites and letters to prison staff in lieu of filing a formal grievance with the grievance coordinator.

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) is not to the contrary. In *Brodheim*, the plaintiff's "interview request- a challenge to an adverse ruling on his complaint- was part of the grievance process, and was thus protected activity." *Id*. at 1271, n. 4. This interview request came one month after the plaintiff had initiated the grievance process by filing an administrative grievance. *Id*. at 1265. Here, Plaintiff's kites preceded the grievance process and therefore, were not protected activity pursuant to which a First Amendment retaliation claim can be brought. Instead of presenting his complaints to a grievance coordinator, Plaintiff communicated his complaints and his accompanying threats of legal action directly to the staff members who he believed had wronged him. In this particular context, there is clearly a valid, rational connection between a prison regulation which forbids using physical force, intimidation or coercion against prison staff and a correctional institution's legitimate penological interest in the "peaceable operation of the

**ORDER DENYING MOTION
FOR RECONSIDERATION-        2**

prison through the insistence on respect." *Bradley v. Hall*, 64 F.3d 1276, 1281-82 (9th Cir. 1995).

Even assuming Plaintiff's kites constituted protected activity, his retaliation claim still fails. Magistrate Judge Hutton correctly found the defendants are entitled to qualified immunity. While the Plaintiff has a clearly established constitutional right to file prison grievances, he does not have a clearly established right to level threats against prison staff members. It is true the Ninth Circuit has "previously held that disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim*, 584 F.3d at 1271, citing *Bradley*, 64 F.3d at 1281-82 (holding that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance"). *Bradley*, however, was criticized by the U.S. Supreme Court in *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475 (2001). The Supreme Court disapproved of that portion of the Ninth Circuit's analysis in *Bradley* where it "balance[d] the importance of the prisoner's infringed right against the importance of the penological interest served by the rule" and found that as applied to the content of formal written grievances, the rule impermissibly "substantially burdened" prisoners' right of access to the courts. *Shaw*, 532 at 230-31, quoting *Bradley*, 64 F.3d at 1280. The Supreme Court concluded that *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254 (1987), does not permit increasing constitutional protection based on the **content** of the communication because *Turner* does not accommodate valuations of content. *Id*. at 231, citing *Turner*. (Emphasis added). On the contrary, the *Turner* factors concern only the relationship between the asserted penological interests and the prison regulation." *Id*. at 230.

In *Helm v. Hughes*, 2011 WL 476461 (W.D. Wash. 2011), the plaintiff,

**ORDER DENYING MOTION**
**FOR RECONSIDERATION-         3**

an inmate at the McNeil Island Corrections Center, brought a lawsuit claiming he had been subjected to disciplinary punishment in retaliation for his good faith participation in the grievance program. The plaintiff was infracted for violation of Washington Administrative Code (WAC) 137-25-030(506)- threatening another with bodily harm or with any offense against another person, property, or family- and sanctioned for a threat contained in the grievance filed by him. The plaintiff maintained he was wrongly disciplined because the language contained in the grievance was not a direct threat. In her report and recommendation, the Magistrate Judge noted:

> *Shaw* instructs . . . that the court's focus must be content neutral. Prison officials are to remain the primary arbiters of the problems that arise in prison management. If courts were permitted to enhance constitutional protection based on their assessments of the content of the particular communications, courts would be in a position to assume a greater role in decisions affecting prison administration. [Citation omitted]. Thus, this court will not second guess prison officials' determination that the language contained within Mr. Helm's grievance contained a threat. The issues here are whether the prison regulation at issue is "reasonably related" to legitimate penological objectives and whether there is a genuine dispute that prison officials acted unreasonably in applying the prison regulation to Mr. Helm's written grievance. [Citations omitted].

2011 WL 476461 at *4.

Applying the *Turner* factors, the Magistrate Judge concluded there was a valid, rational connection between WAC 137-35-030(506) and legitimate government interests: "Whether written or spoken, there is clearly a rational connection between the regulation of prohibiting inmates from threatening and coercing persons and the legitimate interest of maintaining order in institutions." *Id*. at *7. The same is true in the instant case with regard to the infractions of which Plaintiff was found guilty: WAC 137-25-030(663)- using

**ORDER DENYING MOTION FOR RECONSIDERATION-        4**

physical force, intimidation or coercion against any person, and WAC 137-28-220(202)- abusive language, harassment or other offensive behavior directed to or in the presence of staff.

In *Helm*, the Magistrate Judge noted there was no evidence the plaintiff was prohibited from filing grievances and indeed, acknowledged the plaintiff was disciplined because of the content of his grievance. The regulation constrained only the nature of the language the plaintiff chose to include in his grievances and he was free to file a grievance that did not include a threat. *Id*. The same is true in the instant case. Plaintiff was not prohibited from filing grievances against the prison staff members he claims wronged him. He was disciplined because of the content of his kites. WAC 137-25-030(663) and WAC 137-28-220(202) constrained him only as to the nature of the language he chose to use.

The Magistrate Judge in *Helm* went on to consider whether application of the regulation to plaintiff's grievance was reasonable. She concluded it was reasonable:

> Mr. Helm argues he did not intend his words to be viewed as a threat. However, it is not up to this court (or a jury) to guess what Mr. Helm might have been thinking when he wrote his grievance. Even if the court accepted that Mr. Helm did not intend a threat, it is not this court's role to suggest to prison officials that an alternative interpretation may exist.
>
> . . .
>
> Unlike the inmate in *Hargis* [*v. Foster*, 312 F.3d 404 (9th Cir. 2002)], there is no issue of material fact here as to what Mr. Helm said. He wrote what he wrote. Whether he intended to threaten Correctional Officer Benge is not material to this analysis. What is material is that there exists a regulation to prohibit threatening language, the regulation is constitutional because it has legitimate penological purposes, and prison officials reasonably determined that the regulation should be

**ORDER DENYING MOTION FOR RECONSIDERATION-         5**

> applied to the words contained in Mr. Helm's grievance. Grievance Specialist Hughes believed that the language constituted a threat. He sent the grievance on to Superintendant [sic] Van Boening, who agreed that the words constituted a threat. Mr. Hughes then instituted the infraction process and the infraction was upheld in a disciplinary hearing by Hearings Officer Janet Gaines and Superintendent Designee Sean Murphy. The court concludes they did not act unreasonably in applying the regulation to Mr. Helm's written grievance.

*Id.* at *8.

Similarly here, the application of WAC 137-25-030(663) and WAC 137-28-220(202) to Plaintiff's kites was reasonable. These regulations are constitutional because they serve legitimate penological purposes, and prison officials reasonably determined the regulations applied to the words used in Plaintiff's kites.

In *Helm*, the Magistrate Judge concluded the defendants had not violated the plaintiff's constitutional rights, recommended that summary judgment be granted on his retaliation claims, and found it was unnecessary to address whether qualified immunity should be applied. *Id*. at *9-10. Her recommendation was subsequently adopted by the district judge. 2011 WL 462567 (W.D. Wash. 2011). Magistrate Judge Hutton too would have been justified in finding no violation of Plaintiff's constitutional rights, but he correctly concluded there is "no clearly established right entitling a prison inmate to communicate threats in writing to prison staff in the form or guise of grievances or otherwise" and therefore, that Defendants are entitled to qualified immunity. (ECF No. 57 at pp. 12-13).

The Ninth Circuit's decision in *Brodheim* did not erase the Supreme Court's criticism in *Shaw* of the Ninth Circuit's decision in *Bradley*. This criticism was noted not only by the Magistrate Judge in *Helm*, but also by

**ORDER DENYING MOTION FOR RECONSIDERATION-    6**

Ninth Circuit Judge Tallman in the dissenting opinion he filed in *Hargis v. Foster*, 312 F.3d at 413-416. Judge Tallman disagreed with the majority opinion which he described as effectively "mandat[ing] that a jury be allowed to determine how coercive and dangerous Hargis's speech was." *Id*. at 413. The *Hargis* case involved a factual situation bearing significant resemblance to the case before this court, described in Judge Tallman's dissenting opinion as follows:

> Prisons exist in order to maintain order over those who have demonstrated that they are incapable of following the rules established by society. Coercion undermines that effort. Prisoners have alternative means of exercising their rights, such as by filing a written grievance rather than directing comments personally to guards. Allowing inmates such as Hargis to personally threaten or warn guards like Beauchamp to evade compliance with legitimate institutional rules would have a dramatic effect on prison life- prisoners would be quicker to verbalize and attempt to intimidate guards, and guards would have to attempt to guess what a prisoner *really meant* every time a prisoner made a veiled threat. Finally, the government has few alternatives in this sort of situation. Prison officials must maintain order if they are to remain in control. The written grievance procedure available here accommodates prisoner's rights while preventing direct confrontations between guards and prisoners.
>
> It is not our job, or that of a jury, to guess what Hargis might have meant or might have been thinking when he verbally warned Beauchamp that if he forced Hargis to shave with a safety blade Beauchamp's action would be subject to court review. Prison officials conducted a disciplinary hearing and determined that those words represented coercion. It is not the legitimate role of a federal court to suggest to the warden and his officers that there is an alternative interpretation, that prison officials may have been wrong, and that a jury should determine the truth.
>
> . . .
>
> We simply do not analyze a prisoner's First Amendment rights the way we would the First Amendment rights of a law-abiding citizen. Prisoners sacrifice many of their freedoms as proper punishment for their crimes. Whether

**ORDER DENYING MOTION FOR RECONSIDERATION-        7**

> inmate Hargis actually intended to threaten or coerce correctional officer Beauchamp does not matter. What does matter is that the Idaho Correctional Institution in Orofino had a necessary regulation designed to prohibit coercion; the regulation is clearly constitutional because it has a legitimate penological purpose; and prison officials reasonably determined that Hargis sought to coerce Officer Beauchamp. This determination was certainly within the "broad discretion" granted prison officials.

*Id.* at 415-16. (Emphasis in original).

Plaintiff Entler was entitled to file a formal grievance with the grievance coordinator seeking to redress the alleged wrongs committed against. He did not file such a grievance. Instead, he sent kites directly to the prison staff he asserted had wronged him, threatening them with lawsuits, criminal charges, and arrest. Even assuming these kites constituted grievances, Plaintiff was not retaliated against for petitioning for a redress of his grievances; instead, he was punished for making threats in those kites. Unlike the act of petitioning for redress of grievances, those threats are not protected activity. The Plaintiff has a right to petition for redress of grievances, simply stating in a non-threatening fashion what the alleged problem is and how it can be corrected. Nothing precluded Plaintiff from filing a formal grievance with the grievance coordinator seeking a remedy for the wrongs alleged by him. He may not, however, abuse the process. If he does so, he is subject to punishment without infringing on his right to petition for redress of grievances. Defendants correctly point out that "[a]lternative ways to communicate to staff remain open because inmates can use the grievance process or can write letters and kites that do not attempt to intimidate staff."

Here too, in this litigation, Plaintiff seeks to operate outside of the established process by sending letters to the Chief Judge of this district, the Chief Judge of the Ninth Circuit Court of Appeals, the Chief Justice of the

**ORDER DENYING MOTION
FOR RECONSIDERATION-        8**

United States Supreme Court, the U.S. Department of Justice, and the American Civil Liberties Union (ECF Nos. 63, 64, 67 and 68), threatening to file criminal charges against court personnel, instead of simply presenting his legal arguments to this court in his Motion For Reconsideration, and hereafter to the Ninth Circuit Court of Appeals and potentially to the United States Supreme Court. Plaintiff has a right to send these letters, they have been filed of record, and they have no bearing on this court's analysis of the proper legal argument presented in Plaintiff's Motion For Reconsideration. In the prison context, however, threatening letters are subject to infraction by prison authorities in the interests of institutional order and security.

A Fed. R. Civ. P. 59(e) motion to alter or amend can only be granted when a district court: (1) is presented with newly discovered evidence; or (2) committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003). This court did not commit clear error in adopting the Magistrate Judge's report and recommendation and that decision is not manifestly unjust. Accordingly, Plaintiff's Motion For Reconsideration (ECF No. 65) is **DENIED**. The court will entertain no additional motions for reconsideration and Plaintiff's next recourse is an appeal to the Ninth Circuit. Because the Plaintiff is not proceeding *in forma pauperis*, this court need not certify whether an appeal is taken in good faith.

//
//
//
//
//

**ORDER DENYING MOTION FOR RECONSIDERATION-**     9

**IT IS SO ORDERED**.  The District Executive shall forward a copy of this order to Plaintiff, to counsel for Defendant, to Magistrate Judge Hutton, and to Chief Judge Peterson.

**DATED** this  19th  of December, 2013.

*s/Lonny R. Suko*
———————————————
LONNY R. SUKO
Senior United States District Judge

**ORDER DENYING MOTION FOR RECONSIDERATION-        10**