# United States District Court
Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Nov 07, 2018

SEAN F. McAVOY, CLERK

John Thomas Entler,

Plaintiff,

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Christine Gregoire, Scott Frakes, Steven Sinclair, Carrie Meyer, Christopher Bowman, Ronald Knight, Lt. R. Williams, Lt. Daniel Bayer, G. Pierce, D. Jackson, Lucy Henderson, Steven Fleenor, Rodney Shumate, Lynn Clark, Kenneth Davenport, Kirk Jessee, JoAnn Irwin-McCoy, Nathan Shatto, Deborah Creeley-Luke, & John/Jane Does 1-100,

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section IV. Do not include addresses here.)*

**Case No.** 12-cv-05141-TOR

(To be filled out by Clerk's Office only)

FIRST AMENDED

# COMPLAINT

*(Pro Se Prisoner)*

Jury Demand?

☒ Yes

☐ No

---

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only:* the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

1.

## I.    COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

    ☒    42 U.S.C. § 1983 (state, county, or municipal defendants)

    ☐    Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

## II.    PLAINTIFF INFORMATION

| ENTLER,   JOHN    T. | GALHEN MELCHIZEDEK |
|---|---|
| Name (Last, First, MI) | Aliases |

964471
Prisoner ID #

MONROE CORRECTIONAL COMPLEX - TRU
Place of Detention

P.O. BOX 888
Institutional Address

| MONROE | Wa. | 98272 |
|---|---|---|
| County, City | State | Zip Code |

## III.    PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

    ☐    Pretrial detainee

    ☐    Civilly committed detainee

    ☐    Immigration detainee

    ☒    Convicted and sentenced state prisoner

    ☐    Convicted and sentenced federal prisoner

2.

## IV.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1:    <u>Christine Gregoire</u>
　　　　　　　Name (Last, First)

　　　　　　　<u>(Unknown)</u>
　　　　　　　Current Job Title

　　　　　　　<u>(Unknown)</u>
　　　　　　　Current Work Address

　　　　　　　<u>(Unknown)</u>
　　　　　　　County, City　　　　　　State　　　　　Zip Code

Defendant 2:    <u>Scott Frakes</u>
　　　　　　　Name (Last, First)

　　　　　　　<u>Assistant Secretary of Department of Corrections</u>
　　　　　　　Current Job Title

　　　　　　　<u>7345 Linderson Way S.W</u>
　　　　　　　Current Work Address

　　　　　　　<u>Tumwater,</u>　　　　　　<u>Wa.</u>　　　　　<u>98501</u>
　　　　　　　County, City　　　　　　State　　　　　Zip Code

3.

**Defendant(s) Continued**

Defendant 3:    Steven Sinclair
                Name (Last, First)

                Secretary of Department of Corrections
                Current Job Title

                7345 Linderson Way S.W.
                Current Work Address

                Tumwater                        Wa.                98501
                County, City                    State              Zip Code


Defendant 4:    Carrie Meyer
                Name (Last, First)

                Administrative Assistant
                Current Job Title

                1313 N. 13th Ave.
                Current Work Address

                Walla Walla                     Wa.                99362
                County, City                    State              Zip Code

4₄

Defendants Continued

5.   Christopher Bowman,
     Associate Superintendent
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

6.   Ronald Knight
     Corrections Program Manager
     1313 N. 13th Ave
     Walla Walla, Wa. 99362

7.   R. Williams
     Lieutenant
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

8.   Daniel Bayer
     Lieutenant
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

9.   G. Pierce
     Major Hearings Officer
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

10.  D. Jackson
     Major Hearings Officer
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

11.  Lucy Henderson
     position unknown
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

12.  Steven Fleenor
     Mail Room Sergeant
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

13.  Rodney Shumate
     Bar Unit Manager
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

14.  Lynn 'Irish' Clark
     Bar Unit Manager
     1313 N. 13th Ave.
     Walla Walla, Wa. 99362

5.

Defendants Continued

15.   Kenneth Davenport
      Bar Unit Sergeant
      1313 N. 13th Ave.
      Walla Walla , Wa. 99362

16.   Kirk Jessee
      Bar Unit Sergeant
      1313 N. 13th Ave.
      Walla Walla, Wa. 99362

17.   JoAnn Irwin-McCoy
      Bar Unit Counselor
      1313 N. 13th Ave.
      Walla Walla, Wa. 99362

18.   Nathan Shatto
      Bar Unit Curio Officer
      1313 N. 13th Ave.
      Walla Walla, Wa. 98362

19.   Deborah Creeley-Luke
      Corrections Officer
      1313 N. 13th Ave.
      Walla Walla, Wa. 99362

20.   John/Jane Does 1-100
      Position Unkbown
      1313 N. 13th Ave.
      Walla Walla, Wa. 99362

///

///

///

///

///

///

///

///

///

///

6.

## V.     STATEMENT OF CLAIM

Place(s) of
occurrence:                Washington State Penitentiary, 1313 N. 13th Ave.,
                           Walla Walla, Wa. 99362

Date(s) of occurrence:   November 2011 -- September 2012

State which of your federal constitutional or federal statutory rights have been violated:

First Amendment and RCW 9A.80.100 (Leading Organized Crime)

///

*State here briefly the FACTS that support your case. Describe how each defendant was
personally involved in the alleged wrongful actions, state whether you were physically injured as
a result of those actions, and if so, state your injury and what medical attention was provided to
you.*

FACTS:

SEE ATTACHED COMPLAINT AFFIDAVIT

AT PAGES 1 -- 25

///
///
///
///
///
///
///
///
///
///
///
///
///

## VIII.  PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).*

Have you brought any other lawsuits in state or federal court while a prisoner?    ☒ Yes    ☐ No

If yes, how many?        **over 20**

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

The Court Has already addressed this issue. See ECF #25. Additionally the law suit filed against BUM Clark and Creeley-Luke was dismissed WITHOUT PREJUDICE.(See Entler v. Creeley-Luke, Est. Dist Wash. No. 12-cv-5120-JPH (ECF # 12). This is the same with my law suit against MRS Fleenor. See Est. Dist. Wash. No. 12-cv-5114-CI-TOR (ECF #10). This is also the case I filed against BUC Irwin-McCoy. See Est. Dist. Wash. No. 12-cv-5122-TOR (ECF #11). All three cases were dismissed WITHOUT PREJUDICE. See Attachement 2.

Furthermore, I have already payed the filing fee.

/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 

8.

## VI. ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Have you filed a grievance concerning the facts relating to this complaint?  ☒ Yes  ☐ No
    If no, explain why not:

I have exhausted the grievance process and the Infraction Proce.

Is the grievance process completed?  ☒ Yes  ☐ No
    If no, explain why not:

## VII. RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

SEE ATTACHED COMPLAINT AFFIDAVIT

AT PAGES 26 -- 27

4

## IX.    PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

*Plaintiff must sign and date the complaint and provide prison identification number and prison address.*

| | |
|---|---|
| 11/6/18 | |
| Dated | Plaintiff's Signature |

ENTLER,   JOHN   T.
Printed Name (Last, First, MI)

964471
Prison Identification #

MONROE CORRECTIONAL COMPLEX - TRU
P.O. BOX 888                MONROE,          WA.    98272

| Prison Address | City | State | Zip Code |
|---|---|---|---|

10.



ATTACHMENT
1

ATTACHMENT-1

## C O M P L A I N T   A F F I D A V I T

State of Washington     )
                        ) ss.
County of Snohomish     )

~~I declare under the penalty of perjury under the laws of the United States that the below is true and correct to the best of my personal knowledge, personal beliefs, and personal experiences, therefore I declare as follows:~~

I am the plaintiff in the matter of Entler v. Gregoire et al, and submit this "COMPLAINT AFFIDAVIT" in support of the alleged Civil Rights violations and State Law Claims of Leading Organixzed Crime alleged to have been committed by Defendants in this matter.

A. Facts Relevant to Complaint:

(i) Facts Relating to Claim No. 1:

1. On approximately March 27, 2012, my Mother Ruth Glaesemann ordered the following books from Amazon.Com.:

(1) Lost Books of the Bible and Forgotten Books of Eden; (2) The Gospel of Mary Magdalene; (3) The Lost Gospel of James; (4) The Gospel of Philip, (5) The Gospel of Thomas; and (6) The Witness of the Stars.

2. Books 2-6 were scheduled to be delivered at the Washington State Penitentiary (WSP) on April 4, 2012. The first book was scheduled to be delivered at WSP on April 17, 2012. The mailing address these books were mailed to me at WSP was:

John Thomas Entler, #96447
Washington State Penitentiary
1313 N. 13th Ave., Baker A-c-106
Walla Walla, Wa. 99362

3. On April 16, 2012, I received the receipts for these books in the mail, showing were my mother had purchased these six books for me.

Complaint Affidavit
Page 1 of 27

4. On April 16, 2012, when I received the receipts, I noticed on the mailing address that my last number in my DOC number (the number "1" in 96447[1]), was missing from the mailing address.

5. On April 16, 2012, I immediately sent a Inmate Kite (IK) to the mailroom notifying them that they would receive books for me with the last number in my DOC number missing from the address.

6. On April 18, 2012, I received a response from Mailroom Room Sergeant (MRS) Steven Fleenor stating: "any package that does not have a complete DOC # is returned to sender. NO exceptions."

7. Under DOC Policy 450.100 (IV)(A)(1)(a), where MRS Fleenor gets his authority to disburse mail/packages states:

"Mail sent to offenders via UPS will be addressed with the full committed name, and DOC number. Staff will make reasonable efforts to identify the offender, for who the mail is intended. Mail not adequately addressed for whom the intended recipient cannot be identified will be returned to sender with the reason for the return noted on the envelope."

8. Books 2-6 had already been delivered on April 4, 2012, before the IK sent April 17, 2012. MRS Fleenor, Deanna Baker, and Richard Zaragoza returned these books to Amazon.Com. Except for the last number in the DOC number missing, it was possible for Sgt. Fleenor to identify me as the recipient of the books.

9. MRS Fleenor, Ms. Baker, and Mr. Zaragoza returned these books (books 2-6) in violation of DOC Policy 450.100 (IV)(A)(1)(a), based on Sgt. Fleenor's statement that there were "NO exceptions." See ¶6 above.

10. The first book was received by MRS Fleenor, Ms. Baker, and Mr. Zaragoza on or after April 17, 2012, at the same time they received not only adequate information indentifying me as the recipient of the book from the mailing address on the package, but they had my IK, where I identified myself as the recipient of the book.

11. MRS Fleenor, Ms. Baker, and Mr. Zaragoza returned the book (book 1) in violation of DOC Policy 450.100 (IV)(A)(1)(a).

12. I filed a grievance against MRS Fleenor on approximately May 4, 2012, for refusing to comply with DOC Policy 450.100(IV)(A)(1)(a).

13. Again, in May 2012, my mother reordered the six books, and again payed the shipping cost. This time the package had my full name and DOC Number.

///

Complaint Affidavit
Page 2 of 27
///

14. The books were received at WSP on May 23, 2012. I received books 3-6, and did not receive books 1 and 2. On May 18, 2012, I had met with Lt. Steve Barker who assured me that I would receive "ALL" the books when they were received at WSP.

15. On May 18, 2012, I again sent MRS Fleenor a list of the 6 books that I would be the recipient of, identifying myself as the recipient of the books.

16. On June 11, 2012, I sent my Mother a letter telling her what books I had received. On June 25, 2012 , I received a letter from my Mother saying that the mailroom had returned two of my books again.

17. On June 27, 2012, I filed another grievance against the mailroom and alleged retaliation by MRS Fleenor sending my books back again because of my first grievance. I was told that the issue was not grievable.

18. On June 28, 2012, at 6:40pm, Bar Unit Sergeant (BUS) Kirk Jessie sent an e-mail to Correctional Program Manager (CPM) Ronald Knight, and to MRS Fleenor advising them that instead of filing a grievance, I had sent letters to Governor Christine Gregoire and the Washington State Legislature.

19. On June 29, 2012, at 7:44am, MRS Fleenor sent BUS Jessie and CPM Knight a response e-mail advising them of a sceem they could use to scan my legal mail for it's contents and then confiscate the letters and use them to infract me for there contents.

20. MRS Fleenor, BUS Jessie, and CPM Knight would have known, as a matter of clearly established law, that infracting me and/or planing a sceem by which they could infract me, for the contents of my letters and grievances complaints against MRS Fleenor, would have violated my clearly established First Amendment rights against retaliation.

21. Bar Unit Manager (BUM) Lynn 'Irish' Clark subsequently adopted MRS Fleenor's sceem and infracted Mr.Entler 4 times for sending kites and letters to him, Mrs. Gregoire and Mr. Warner in the mail.

22. MRS Fleenor, BUS Jessie, and CPM Knight directly participated in the retaliation against me for filing grievances complaints against MRS Fleenor.

(ii). Facts Relating to Claim No. 2:

I incorporate by reference the facts stated above in Facts Relating to Claim No.1, ¶¶1-22, as fully reinstated herein for all intents and purposes, relating to Facts Relating to Claim No. 2.

///

1. On June 12, 2012, after I got my monthly account statement, I sent a informal grievance resolution IK to the Washington State Penitentiary Accounting Department (WSP-AD), requesting to known where they get the authority to add Legal Financial obligations (LFO's) in the amount of $200.00.

2. On June 15, 2012, the WSP-AD sent me back my IK with a copy of a certificate from the Washington State Court of Appeals.

3. On June 18, 2012, I sent another IK to the WSP-AD stating that by their own admissions, they were violating state law by adding this cost to my prison account. I told the WSP-AD to remove the cost bill from my account or I would sue them and make them remove it. I then asked whether or not they were going to remove it, "YES or NO."

4. On June 18, 2012, the WSP-AD responded to my June 18, 2012 IK stating that Headquarters in Tumwater added the cost bill to my account and to contact them with any further questions.

5. On June 20, 2012 and July 30, 2012, I sent letters to the Washington State Department of Corrections Accounting Department (WDOC-AD), regarding the cost added to my account to try to informally resolve my grievance. I never got a response to my letters.

6. On June 28, 2012, at 9:12am, Bar Unit Counselor (BUC) JoAnn Irwin-McCoy sent an e-mail to Administrative Assistant (AA), Mrs. Carrie Meyer (Steven Sinclair's Assistant), Mrs. Henerdson, CPM Knight, and BUM Clark, informing them of the IK's sent to the WSP-AD.

7. On June 28, 2012, at 10:17am, BUM Clark sends an e-mail to BUC Irwin-McCoy directing her to get scaned copies of the IK's I sent to the WSP-AD.

8. On June 28, 2012, at 11:27am BUC Irwin-McCoy sent an e-mail to WSP-AD Janet Laroue, requesting a copy of the IK's to the WSP-AD, and sent a copy of the e-mail to BUM Clark.

9. On June 28, 2012, at 11:49am, WSP-AD Laroue sent both BUC Irwin-McCoy and BUM Clark my IK's threatening to sue, which BUM Clark then used to infract me.

10. BUC Irwin-McCoy, WSP-AD Laroue, BUM Clark, Mrs. Henderson, CPM Knight, and AA Meyer would have known of clearly established law prohibiting them from using the IK's from WSP-AD to infract me, and would violate my clearly established First Amendment rights against retaliation.

11. WSP-AD Laroue, BUC Irwin-McCoy, BUM Clark, CPM Knight, Mrs. Henerson, and AA Meyer directly participated in the infraction issued by BUM Clark for the Ik's sent to the WSP-AD.

Complaint Affidavit
Page 4 of 27

(iii). Facts Relating to Claim No. 3:

I incorporate by reference the facts stated above in Facts Related to Claim No. 1, ¶¶ 1-21, and Facts Relating to Claim No. 2, ¶¶ 1-11, as fully reinstated herein, with regards to Facts Relating to Claim No. 3.

1. On November 15, 2011, I sent BUC Irwin-McCoy a Inmate Kite (IK) for legal copies, she never responded.

2. Again on November 21, 2011, I sent BUC Irwin-McCoy a request for copies, and then she complied with my request.

3. On December 28, 2011, I sent BUC Irwin-McCoy a IK requesting legal copies, she did not respond to my request.

4. On January 8, 2012, I sent BUC Irwin-McCoy another IK requesting legal copies, and then BUC Irwin-McCoy complied with my request.

5. On approximately January 15, 2012, I sent BUC Irwin-McCoy a IK requesting legal copies. She never responded.

6. On January 22, 2012, I sent BUC Irwin-McCoy a second IK again requesting legal copies. This time I expressed to BUC Irwin-McCoy, that I was starting to wonder whether or not she was not responding and giving me legal copies when I ask her, on purpose, and explained to her that I thought we should talk. We talked that day January 22, 2012.

7. On February 8, 2012, I sent BUC Irwin-McCoy a request for legal copies, and she did not respond to my request.

8. On February 15, 2012, I sent BUC Irwin-McCoy a second kite requesting legal copies, and then she responded.

9. On March 13, 2012, while getting legal copies from BUC Irwin-McCoy she used abusive language towards me and mouthed to me that she should not have to be my legal secretary, and I made a complaint to her supervisor BUM Clark.

10. BUM Clark told me that he would have a talk with BUC Irwin-McCoy.

11. I wrote BUC Irwin-McCoy a IK asking her to explain her conduct, she never answered my IK.

12. On May 7, 2012, I again sent BUC Irwin-McCoy a IK requesting legal copies, she did not respond.

13. This time I filed a admisistrative grievance against Mrs. Irwin-McCoy.

///

Complaint Affidavit
Page 5 of 27

14. On May 10, 2012, at 3:50 pm, BUC Irwin-McCoy came to my cell door and wanted my legal documents so that she could go copy them. I told her that because of the amount of copies I needed, I needed to be present during copying, which I have a right under W-DOC Policy 590.500, to be present, so that I could make sure that every thing got put in the proper envelopes. BUC Irwin-McCoy said that we could do my legal copies on Monday May 14, 2012.

15. On May 14, 2012, at 8:00am movement to the law library, I seen BUC Irwin-McCoy coming to work, just outside Baker Unit (BU). I told BUC Irwin-McCoy that if she wanted to do my legal copies that morning, I would stay back from the law library and not go. BUC Irwin-McCoy told me to just go to the law library, that she would do my legal copies when I got back, to tell the officers to tell her when I got back.

16. On May 14, 2012, when I returned from the law library BUC Irwin-McCoy was waiting for me, just inside BU, and told me she would not do my legal copies right then. She never called me out, and she never did them that day.

17. As a result of BUM Irwin-McCoy not giving me legal copies, I was cause to miss my May 14, 2012 court deadline.

18. On May 14, 2012, I sent IK's to BUC Irwin-McCoy's supervisor BUM Clark, and Washington State Penitentiary Superintendent (WSPS) Mr. Sinclair, requesting that she be terminated from employment for her refusal to carry out her duties imposed upon her by RCW 72.09.190, under RCW 42.20.100, and RCW 43.01.125. Neither BUM Clark or WSPS Sinclair responded to my IK's.

19. On May 31, 2012, I sent letters regarding misconduct of Washington State Penitentiary Superintendent (WSPS) Steven Sinclair, BUS Davenport, BUS Jessie, and BUC Irwin, to Mr. Warner and Mrs. Gregoire.

20. On June 6, 2012, Vicki Loete (DOC Headquarters Correspondence Unit) created a memo in regards to my letter sent to Mr. Warner and Mrs. Gregoire.

21. On June 18, 2012, I sent BUM Irwin-McCoy a IK requesting legal copies. I advised her that I had a court deadline for June 29, 2012.

22. On June 18, 2012, BUC Irwin-McCoy gave me the envelopes I need to mail my legal copies to the court, and told me to send her a IK when I was ready for legal copies.

23. On June 19, 2012, I sent BUC Irwin-McCoy a IK telling her that I was ready for legal copies, she did not respond and did not have anyone else do my copies in her absence.

/// 2

Complaint Affidavit
Page 6 of 27

24. On June 25, 2012, I sent BUC Irwin-McCoy a IK telling her that I needed legal copies to meet my court dealine, she sent me back my IK saying that she did not receive my IK saying that I was ready for copies.

25. Because Mrs. Irwin-McCoy did not provide me legal copies on June 25, 2012, I was not able to get the right amount of copies needed to provide the court, nor to get a copy to keep for myself, as allowed by W-DOC Policy 590.500, and I had to mail my only set of legal pleadings to the court so I did not miss my court deadline.

26. On June 26, 2012, I was called into the Baker Unit Sergeant's Office (BUSO) by CPM Knight, and was threatened with retaliatory action (transfer and infraction) for filing complaints and grievances against BUC Irwin-McCoy.

27. On June 27, 2012, at 12:53, BUC Irwin-McCoy sent an e-mail to CPM Knight and BUM Clark requesting to know if there is anything she needs to do with regards to CPM Knights' interview regarding my grievances and complaints against her.

28. On June 27, 2012, CPM Knight sent BUC Irwin-McCoy an e-mail to prepare a response letter regarding Mr.Knights meeting with me. CPM Knight says:

"You can perpare an appropriate response for my signature. I would include wording that is direct that he is entitled to his opinion and perspective, but you Counselor Irwin have been doing your job with respects to his legal copying needs based upon your availability and his requests. I will help you with the wording if you need me to. Just keep doing your job, JoAnn, and do not be intimidated by this offernder's angry response. This boarders on threatening conduct, and I will come down and interview him **again**."

29. On June 27, 2012, at 2:04pm, BUC Irwin-McCoy sent the prepared response letter to CPM Knight to sign. The response letter stated:

"Counselor Irwin has been keeping me apprised of your requests for copies and her responses to you. I understand you are entitled to your opinions and perspective of the situation; however, Counselor Irwin has been responding to your requests and completing the copy requests in a timely manor. I would discourage you from making intimidating and threatening statements in the future to staff. I also encourage you to work in an appropriate manner with Counselor Irwin in meeting your legal obligations."

30. On July 5, 2012, I filed a criminal complaint with the Walla Walla County Sheriff's Office against BUC Irwin-McCoy, BUM Clark, and WSPS Sinclair for BUC Irwin-McCoy's refusing to preform a duty required by law.

///

31. On July 6, 2012, Department of Corrections Assistant Secretary (DOC-AS) Mr. Scott Frakes, responded to my letter dated May 31, 2012 sending a copy to Mr. Warner, USPS Sinclair, CPM Knight, BUM Clark, Grievance Coordinator (GC) Mr. Lee Young, and BUC Irwin-McCoy, which outlined my complaints and grievance history at WSP.

32. On July 11, 2012, USPS Sinclair's Administrative Assistant (AA) Mrs. Patricia Wilson sent a copy of DOC-AS Frakes July 6, 2012 letter to CPM Knight, BUM Clark, GC Young, and BUC Irwin-McCoy.

33. BUC Irwin-McCoy, CPM Knight, and BUM Clark, would have known or clearly established law prohibiting them from threatening me with infractions, being placed in IMU, and being transferred for filing grievances and complaints against BUC Irwin-McCoy, and would have violated my First Amendment rights against retaliation.

34. BUC Irwin-McCoy, BUM Clark, and CPM Knight, directly participated in the retaliation against me by BUC Irwin-McCoy for filing grievances and complaints against her, and by CPM Knight on June 26, 2012 threats, and by BUM Clark issuing the infractions on July 23, 2012.

(iv) Facts Relating to Claim No. 4:

I incorporate by reference the facts stated above in Facts Relating to Claim No. 1, ¶¶ 1-22, Facts Relating to Claim No. 2, ¶¶ 1-11, and Facts Related to Claim No. 3, ¶¶ 1-34, as fully reinstated herein, with regards to the Facts Related to Claim No. 4.

1. On June 26, 2012, I wrote a IK to BUM Clark and USPS Sinclair requesting that BUC Irwin-McCoy be fired and I threatened to file criminal charges on them.

2. On June 27, 2012, I was called into BUS Jessie's officie for a [second] meeting with CPM Knight and BUS Jessie was present at this [second] meeting. I was again threatened with being placed in segregation (IMU) by both CPM Knight and BUS Jessie, and both CPM Knight and BUS Jessie threatened me with being transferred for saying I would either file criminal charges, or threatening to sue staff. BUS Jessie stated that if the decision was up to him I would have already been transferred out of the Bar Units.

3. On June 27, 2012, at 12:47pm, Mrs. Lucy Henderson sent the IK threatening to file criminal charges against BUC Irwin-McCoy, BUM Clark, CPM Knight, and BUC Irwin-McCoy.

4. On June 27, 2012, at 12:53, BUC Irwin-McCoy sent an e-mail to CPM Knight and BUM Clark requesting to know if there was anything she needed to do with regards to the IK threatening criminal charges.

///

Complaint Affidavit
Page 8 of 27

5. On June 27, 2012, at 2:04pm, BUC Irwin-McCoy sent the proposed response regarding the [second] interview to CPM Knight, the response said:

"Counselor Irwin has been keeping me apprised of your requests for copies and her response to you, I under stand you are entitled to your opinion and perspective of the situation; however Counselor Irwin has been responding to your requests and completing the copy request in a timely manner. It is inappropriate for you to attempt to intimidate and harass Counselor Irwin. Per our discussion in BAR Unit Sergeant' Officie with Sgt. Jessie, there will be consequences if you choose to continue to communicate with staff in an inappropriate manner. I recall that you indicated that you did not intend to write kites to staff that could be construed as threatening or harassing. I encourage you to work in an appropriate manner with Counselor Irwin in meeting your legal obligations."

6. On June 27, 2012, at 4:46pm, CPM Knight tells Mrs. Henderson the specific's of his [second] meeting with me, CPM Knight says:

"I told offender Entler that his letter to UM Clark is inappropriate and boarders on threatening behavior and harassment of Counselor Irwin. Sgt. Jessie witness my discussion and offender Entler indicated that he would not be sending letters like this again. Offender Entler stated that he sent a letter to Superintendent Sinclair with the same information on it. I plainly told his that if he repeats kites like this he will likely be placed in IMU. Carrie I believe offender Entler understands out position and I told him a written response will be sent to him from me."

7. On June 28, 2012, at 8:14am, Mrs. Henderson sends a e-mail to CPM Knight, BUM Clark, BUC Irwin-McCoy, and AA Meyer saying that she has the kite sent to WSPS Sinclair.

8. On June 28, 2012, at 9:10am, AA Meyer sends an e-mail to Mrs. Henderson, CPM Knight, BUM Clark, and BUC Irwin-McCoy, saying: "[Great, let's combine all of those for one response. Thank's Lucy."

9. With regards to the [second] interview by CPM Knight with me on June 27, 2012, BUC Irwin-McCoy also prepared CPM Knight's response.

10. On June 28, 2012, at 12:55pm, CPM Knight sent the draft of the letter written by BUC Irwin-McCoy, to Mrs. Kitzi Brannock, with a message that stated: "Kitzi, please type the response completed below to offender Entler, John 964471 for my signature. Thanks."

11. On June 28, 2012, at 2:30pm, BUS Jessie sent a "BAR Daily Report" to Mrs. Henderson, BUS Davenport, and BUM Clark, regarding CPM Knight's [second] meeting with me, and informing them that I need to be transferred out of the BAR Units to general population.

Complaint Affidavit
Page 9 of 27

12. On July 5, 2012, I filed a criminal complaint with the Walla Walla County Sheriff's Office against BUC Irwin-McCoy, BUM Clark, and USPS Sinclair, for BUC Irwin-McCoy's refusing to preform a duty required by law.

13. BUC Irwin-McCoy, BUS Jessie, BUM Clark, CPM Knight, Mrs. Henerson and AA Meyer, would have reasonably known under clearly established law that infracting me for filing grievances and threatening to sue was illegal and would Violate my First Amendment rights against retaliation

14. BUC Irwin-McCoy, BUS Jessie, BUM Clark, CPM Knight Mrs. Henerson and AA Meyer directly participated in the infraction for threatening both to file criminal charges and threats to sue staff.

(v). Facts Relating to Claim No. 5:

I incorporate by reference the facts stated above in Facts Relating to Claim No. 1, ¶¶ 1-22, Facts Relating to Claim No. 2, ¶¶ 1-11, Facts Relating to Claim No. 3, ¶¶ 1-34, and Facts Relating to Claim No. 4, ¶¶ 1-14, as fully reinstated herein for all intents and purposes related to Facts Relating to Claim No. 5.

1. On June 5, 2012, I submitted a Inmate Kite (IK) to BUC Irwin-McCoy requesting a Art Curio Permit.

2. On June 14, 2012, Bar Unit Curio Officer (BUCO) Mr. Nathen Shatto responded to my request for a curio permit requesting that I fill out a form and return it to him.

3. On June 19, 2012, I filled out the form and sent it back to BUCO Shatto, via the Unit mail box.

4. On June 28, 2012, at 3:13pm, BUCO Shatto sent an e-mail to 26 USP Staff, including BUM Clark, BUC Irwin, and BUS Jessie requesting information on my behavior.

5. On July 18, 2012, I received a copy of the decision by BUM Clark regarding whether or not my Curio Permit was granted or denied. Noted in the upper right hand corner of the form stated: "Not approved Not programming, negative input from staff." Signed by BUM Clark.

6. On July 18, 2012, I sent a IK to BUCO Shatto stating that I was on a job waiting list, thus the allegation that I was not programming was baseless. I also requested to know who these staff are that provided negative input. That I haven't had any major infractions for almost five years. I also requested to know what the negative impute staff provded.

7. Because the decision regarding my curio was decided on July 12, 2012, and I did not receive it until July 18, 2012, 6 of my 20 day time limit to file a grievance had already past, leaving me 14 days to file my

grievance. So I gave BUCO Shatto 7 of my remaining 14 days to respond to my IK and provide me the names of the staff involved, and then I would have 7 days to prepare and file my grievance. My IK was not intended as a threat to file a grievance against BUCO Shatto if he did not respond to my IK.

8. On July 19, 2012, BUM Clark came to my cell to respond to the IK I sent BUCO Shatto on July 18, 2012. BUM Clark told me that the negative impute was with regards to my IK's and interactions with BUC Irwin-McCoy, but BUM Clark refused to tell me who was all present in the meeting he said was held, and refused to tell me who all provided the negative impute.

9. On July 19, 2012, when BUM Clark came to my cell, I also told him that I was filing a grievance against him and BUCO Shatto for violating my religious beliefs and retaliating against me for denying my curio permit.

10. On July 19, 2012, I filed a grievance against BUM Clark and BUCO Shatto, and those unknown staff that were providing the alleged negative impute, for Unlawful Retaliation and for violating my religious rights. I was told that my grievance was not grievable.

11. The only interactions prior to July 19, 2012, with my Counselor BUC Irwin-McCoy was requesting legal copies and making informal grievance complaints. These actions can hardly be said to be negative interactions with staff.

12. From October 2011 to July 19, 2012, BUC Irwin-McCoy never wrote any negative OMNI Cronos alleging negative behavior by me.

13. As for not programming, I have remained on a job waiting list, which is deemed programming for classification purposes.

14. However, my religion (Messanic Essenism) prevents me from working for any government that employees economic or a capitalist system.

15. I have not worked for W-DOC for nearly 5 years prior to July 19, 2012, because of my religious beliefs.

16. BUCO Shatto admited to me in a Inmate Kite dated June 15, 2013, that [only] him and BUM Clark make the curio permit decision, but that Bar Unit staff have inpute.

17. On August 3, 2012 BUCO Shatto issued the formal denial of my Art Curio Permit.

18. BUCO Shatto John/Jane Does, and BUM Clark would have reasonably known that denying me a Art Curio Permit for my grievances, letters, and kites in the informal grievance process, and infracting me for my Kite to Shatto would violate my clearly established rights against retaliation for making informal grievance resolution requests.

19. CUCO Shatto, John/Jane Does, and BUM Clark directly participated in the denial of my Art Curio Permit and infraction issued by BUM Clark.

(vi). Facts Relating to Claim No. 6:

I incorporate by reference the facts stated above in Facts Related to Claim No. 1, ¶¶ 1-22, Facts Relating to Claim No. 2, ¶¶ 1-11, Facts Relating to Claim No. 3, ¶¶ 1-34, Facts Relating to Claim No. 4, ¶¶ 1-14, Facts Relating to Claim No. 5, ¶¶ 1-19, as fully reinstated herein, for all intents and purposes, related to Facts Relating to Claim No. 6.

1. On July 19, 2012, BUM Clark prepared a Major Infraction Packet regarding the Facts Related to Claims 1, 2, 3, 4, and 5.

2. On July 19, 2012, BUM Clark submitted the Major Infraction Packet to Lieutenant (Lt.) Daniel Bayer, who authorized BUM Clark to submit it to the Major Hearings Office (MHO).

3. On July 23, 2012, the Major Infraction Packet was received in the MHO.

4. On July 24, 2012, I was served with a copy of the Major Infraction Packet put together by BUM Mr. Clark and authorized by Lt. Daniel Bayer alleging that is used "physical force, intimidation, or coercion against any person," based on the facts relating to claims No.'s 1, 2, 3, 4, and 5.

5. On August 1, 2012, I went to my infraction hearing and plead not guilty. I argued that BUM Clark filed the infraction against me because I filed criminal charges against him with the Walla Walla County Sheriff's Office, because I filed grievances against him and/or saying that I would file a grievance against him, for filing grievances and complaints against BUC Irwin-McCoy, and I requested that the infraction be dismissed.

6. I was found "Guilty," by Major Hearings Officer (MHO) Mr. Jackson and sentenced to 15 days loss of gym and yard.

7. I made these same arguments on my appeal from MHO Jackson's findings of guilty.

8. My appeal was upheld by USPS Sinclair, on September 17, 2012. The only stated basis for affirming the finding of guilty was USPS Sinclair's false statement that my appeal does not match the infractions.

9. BUC Irwin-McCoy, John/Jane Does, BUS Jessie, Mrs. Henerson, A. Meyer, CPM Knight, MHO Jackson, Lt. Bayer, and BUM Clark would have reasonably known that infracting me for filing grievances, letter's, and kites sent in Facts Relating to Claim's 1, 2, 3, 4, and 5, would have been unlawful and violated my clearly established First Amendment rights against retaliation.

10. BUC Irwin-McCoy, John/Jane Does, BUS Jessie, Mrs. Henerson, AA Myer, MHO Jackson, Lt. Bayer, and BUM Clark directly participated in the infraction by BUM Clark.

(vii). Facts Related to Claim No. 7.

I incorporate by reference the facts stated above in Facts Relating to Claim NO. 1, ¶¶ 1-22, Facts Relating to Claim No. 2, ¶¶ 1-11, Facts Relating to Claim No. 3, ¶¶ 1-34, Facts Relating to Claim NO. 4, ¶¶ 1-14, Facts Relating to Claim No. 5, ¶¶ 1-19, and Facts Relating to Claim No. 6, ¶¶ 1-10, as fully reinstated herein, for all intents and purpose, related to the Facts Related to Claim No. 7.

1. On July 19, 2012, at 6:30am I was woken by Corrections Officer (C/O) Ms. Suzanne Sullivan and told that I was being assigned a Unit Porter Job.

2. On July 19, 2012, I wrote informal grievance letters to the Religious Programs Manager, and I sent a copy of the letter to BUM Clark, WSPS Sinclair, BUS Davenport, and Chaplain Fred Ivey, because as stated below, BUM Clark was the one who was requiring me to work, thus he was involved in my informal grievance complaint.

3. On July 19, 2012, BUM Clark came by my cell to respond to to my IK to BUCO Shatto, I told BUM Clark that I was filing a grievance against him for violating my religious beliefs and for retaliating against me by denying my curio permit.

4. On July 20, 2012, C/O Sullivan talked to me about my religious rights, and told me that she would have to see if I was allowed to be excused from working.

5. On July 21, 2012, C/O Sullivan talked to me again, and she told me that she talked to BUM Clark, and he made the decision to require me to work.

6. Requiring me to work for W-DOC violates my religious beliefs. I have not worked for W-DOC since February 2007, because of my religious beliefs. If I do not work, I am automatically subject to infraction and punishment for exercising my religious beliefs.

7. BUM Clark does not have to directly state that I will be infracted, the implication of being infracted is asserted by telling me there assigning me a job.

8. On July 23, 2012, I filed a grievance against BUM Clark for making me work contrary to my religious beliefs, under threat of infraction, and punishment.

///

9. I was told that the issue was not grievable.

10. W-DOC does not require Seventh-day Adventist or Jews to work on the Sabbath, contrary to RCW 72.09.460, and they are not subject to infraction and punishment for refusing to work on that day.

11. I know this because I was a practicing Seventh-day Adventist for 15 years, and in 2005 Sgt. Cindy Caughren at WSP tried to make me work on the Sabbath, and the DOC Religious Programs Manager issued a letter to Sgt. Caughren saying that I did not have to work on the Sabbath day.

12. On July 26, 2012, BUM Clark prepared a Major Infraction Packet and provided it to Lieutenant (Lt) R. Williams on July 31, 2012.

13. On July 31, 2012, Lt. R. Williams reviewed and authorized BUM Clark to file the Major Infraction Packet with the Major Hearings Office.

14. On August 1, 2012, the Major Infraction Packet was received in the MHO.

15. On August 2, 2012 I was served with the Major Infractions Packet.

16. BUM Clark wrote me a Major Infraction based on my letter to the Religious Programs Manager saying that I would exercise my constitutional rights to initiate litigation for violation of my religious rights.

17. On August 15, 2012, and pled not guilty.

18. I argued that BUM Clark filed the infraction against me because I filed criminal charges against him, WSPS Sinclair, and BUC Irwin-McCoy, for filing grievances and complaints against him and BUC Irwin-McCoy, and requested that the infraction be dismissed.

19. On August 15, 2012, Major Hearing's Officer (MHO) G. Pierce reduced the Major 663 Infraction to a minor 202 infraction, found me guilty of that, and gave me 5 days cell confinement.

20. I made the same arguments on my appeal as to why BUM Clark wrote the infractions.

21. On August 27, 2012, MHO Jackson upheld the findings of guilty.

22. Both MHO Pierce and MHO Jackson, Lt. Williams, and BUM Clark would have reasonably known as a matter of clearly established law that infracting me for my letter to the Religious Programs Manager would be illegal and would be a violation of my clearly established First Amendment rights against retaliation.

///

Complaint Affidavit
Page 14 of 27

23. MHO Pierce, MHO Jackson, Lt. Williams, and BUM Clark directly participated in the infraction issues by BUM Clark.

(viii). Facts Related to Claim No. 8:

I incorporate by reference the facts stated above in Facts Relating to Claim No. 1, ¶¶ 1-22, Facts Relating to Claim No. 2, ¶¶ 1-11, Facts Relating to Claim No. 3, ¶¶ 1-34, Facts Related to Claim No. 4, ¶¶ 1-14, Facts Related to Claim No. 5, ¶¶ 1-19, Facts Related to Claim No. 6, ¶¶ 1-10,, and Facts Related to Claim No. 7, ¶¶ 1-23, as fully reinstated herein, for all intents and purposes, related to the Facts Related to Claim No. 8.

**1.** On July 22, 2012, I sent a IK to BUM Clark stating that becuase [he] made the [decision] to make me [work] contrary to my religious beliefs, under threat of being infracted for refusing to work, he would be the one I was going to sue for the violation of my religious rights.

**2.** Based on fact in ¶1 above, and the Facts Related to Claims No's 1, 2, 3, 4, 5, 6, and 7, on August 2, 2012, BUM Clark prepared a Major Infraction Packet regarding the IK that I sent him on July 22, 2012.

**3.** On August 2, 2012, BUM Clark submitted the Major Infraction Packet to Lt. Bayer, who authorized BUM Clark to submit it to the Major Hearings Office. (MHO).

**4.** On August 6, 2012, the Major Infraction Packet was received in the MHO.

**5.** On August 6, 2012, I was served with a copy of the Major Infraction Packet by BUM Clark's wife, C/O Clark.

**6.** BUM Clark filed an infraction alleging that I used "physical force, intimidation, or coercion against any person," based on the July 22, 2012 IK that I sent to him.

**7.** Also on August 2, 2012, BUM Clark presented a [false] Minor Infraction with his Major Infraction alleging that I was lying to staff when he says, that I said, in my July 22, 2012 IK, that [he] threatened me that if I did not work [he] would infract me.

**8.** At [no time] did my July 22, 2012 IK did it say that [BUM Clark] threatened me with an infraction if I did not work, I said:

> "Since you have [made the decision to] make [me work] contrary to my religious belief [under threat] of infraction for refusing to work, you will be the one I sue for the violation of my religious civil rights."

///

Complaint Affidavit
Page 15 of 27

9. On Ausgust 15, 2012, my Major Infraction Hearing was held, and I plead not guilty. I argued that BUM Clark filed the infraction against me because I filed criminal charges against him, BUC Irwin-McCoy, and WSPS Sinclair, with the Walla Walla County Sheriff's Office, because I filed grievances against him and/or saying that I would file a grievance against him, and for filing grievances and complaints against BUC Irwin-McCoy, and I requested that the infractions be dismissed.

10. The Major Inraction (663) was reduced to a minor infraction (202), and I was found guilty of the other minor infraction (203) which accused me of lying.

11. As punishment for the infractions, and reference to BUM Clark's prior infractions, MHO Pierce gave me a direct order "not to harass/bager staff to meet your demands for 30 days or receive a 658."

12. Thus, MHO Pierce was himself threatening me with another infraction if I exercised my First Amendment rights in the next 30 days.

13. I made the same arguments on my appeal from MHO Pierce's filings of guilty, and MHO Jackson affirmed the infraction.

14. BUM Clark, Lt. Bayer, MHO Pierce, and MHO Jackson, would have reasonably known under clearly established law, they could not infract me for sending my IK dated July 22, 2012 to BUM Clark, and would be unlawful and violate my First Amendment rights against retaliation.

15. BUM Clark, Lt. Bayer, MHO Pierce, and MHO Jackson directly participated in the infraction issued by BUM Clark.

(ix) Facts Related to Claim No. 9:

I incorporate by reference that facts stated in Facts Related to Claim No. 1, ¶¶ 1-22, Facts Related to Claim No. 2, ¶¶ 1-11, Facts Related to Claim No. 3, ¶¶ 1-34, Facts Related to Claim No. 4, ¶¶ 1-14, Facts Related to Claim No. 5, ¶¶ 1-19, Facts Related to Claim No. 6, ¶¶ 1-9, Facts Related to Claim No. 7, ¶¶ 1-23, and Facts Related to Claim No. 8, ¶¶ 1-15, as fully reinstated herein with regards to the Facts Related to Claim No. 9.

1. On August 1, 2012, and August 2, 2012, I wrote a letter to WSPS Sinclair, to the then Department of Corrections Secretary (DOC-S) Mr. Bernard Warner, and to the then Washington State Governor (WSG) Mrs. Christine Gregoire, regarding the infractions written by BUM Clark in Facts Related to Claim No's 1, 2, 3, 4, 5, 6, 7, and 8, saying that I would contact the Justice Department, and that I would seek legal redress of grievances in the Federal Court's.

/// 2

Complaint Affidavit
Page 16 of 27

2. On August 7, 2012, BUM Clark prepared a Major Infraction Packet and provided it to Lt. Williams on August 8, 2012.

3. On August 8, 2012 Lt. Williams reviewed, approved, and authrozied BUM Clark to file the Major Infraction Packet with the Major Hearings Office.

4. On August 9, 2012, the Major Infraction Packet was received in the Major Hearings Office.

6. On August 10, 2012, I was served with a copy of the Major Infraction Packet by BUM Clark's wife C/O Clark.

7. BUM Clark wrote me another Major Infraction alleging "using physical force, intimidation, or coercion against any person," for the letters that I sent to WSPS Sinclair, DOC-S Warner, and WSG Gregoire on August 1, 2012 and August 2, 2012.

8. My Major Infraction hearing was held by MHO Perce, who again reduced the Major Infaction (663) to a minor infraction (202) and gave me another 5 days cell confinement. MHO Jackson them upheld the findings of guilty on the appeal.

9. On August 2, 2012, I wrote a letter to WSPS Sinclair again, regarding the infractions that BUM Clark issued in the Facts Related to Claim No.'s 1, 2, 3, 4, 5, 6, 7, and 8.

10. On approximately August 3, 2012, Washington State Penitentiary Assistant Superintendent (WSP-AS) Mr. Christopher Bowman sent an e-mail with my letter dated August 2, 2012, and a posted note syaing: "IRISH -Please Draft A Response For SinClair Signature CB."

11. "IRISH" is BUM Clark, and "CB" is WSP-AS Christopher Bowman.

12. On August 10, 2012, at 10:14am, BUM Clark sends the prepared letter for WSPS Sinclair to sign, to AA Wilson, WSPS Sinclair's administrative assistant.

13 The Letter issued by WSPS Sinclair stated that he received my letter dated August 2, 2012, and informed me that he had spoken to BUM Clark about the infractions, and he acknowledged that he [know] that BUM Clark had submitted the infraction concerning my August 1, 2012 letters to DOC-S Warner and WSG Gregoire.

14. WSPS Sinclair not only turned a "[blind eye]" to BUM Clark's infractions, but WSPS Sinclair informed me, with regards to sending "informal grievances," that:

///

Complaint Affidavit
Page 17 of 27

"What you are not allowed to do is first file an informal resolution to a grievance prior to even filing the grievance."

15. On August 21, 2012 DOC-AD Frakes responded to my letters to DOC-S Warner and WSG Gregoire, adpoting the same [turn a blind eye] approach to BUM Clark's infractions.

16. On August 21, 2012, DOC-AS Frakes response to my letter was almost [book] and [verse] the same as the letter BUM Clark prepared for WSPS Sinclair.

17. BUM Clark, WSP-AS Bowman, WSPS Sinclair, DOC-AS Frakes, MHO Pierce, and MHO Jackson would have reasonably known as a matter of clearly established law that they could not infract me for my August 1, 2012, and August 2, 2012 letters to WSPS Sinclair, DOC-S Warner, and WSG Gregoire, and would be unlawful under my First Amendment rights against retaliation.

18. BUM Clark, WSP-AS Bowman, WSPS Sinclair, DOC-AS Frakes, MHO Pierce, and MHO Jackson directly participated in the infraction issued by BUM Clark.

(x). Facts Related to Claim No. 10:

I incorporate by reference the facts stated in Facts Related to Claim No. 1, ¶¶ 1-22, Facts Related to Claim No. 2, ¶¶ 1-11, Facts Relating to Claim No. 3, ¶¶ 1-34, Facts Related to Claim No. 4, ¶¶ 1-14, Facts Related to Claim No. 5, ¶¶ 1-19, Facts Related to Claim No. 6, ¶¶ 1-9, Facts Related to Claim No. 7, ¶¶ 1-23, Facts Related to Claim No. 8, ¶¶ 1-15, and Facts Related to Claim No. 9, ¶¶ 1-18, as fully reinstated herein with regards to the Facts Related to Claim No. 10.

1. On August 6, 2012, I sent a letter to WSPS Sinclair, regarding a memo that BUM Clark manipulated, by re-writing his own.

2. Kerri Robinson had issued a memo regarding up-coming menu changed to the breakfast tray. Mrs. Robinson's memo stated:

"Please note beginning August 10, 2012, at friday evening meal, all offenders will receive their Saturday breakfist tray. The breakfist has been a huge success at other facilities! Mainline will not be run on Saturday morning so offenders must pick up their breakfist tray on Friday evening dinner without exception."

3. BUM Clark, when issuing his own memo, changed Mrs. Robinson's memo by requiring offenders to pick-up their Saturday morning breakfist Friday evening, and then bring it back out on Saturday morning to eat.

4. Based on my letter to WSPS Sinclair, BUM Clark on August 8, 2012, at 11:01am, had C/O Mrs. Sullivan call me on my cell speaker, to go to the B

Complaint Affidavit
Page 18 of 27

er Unit Sergeant's Office where BUM Clark wanted to talk to me.

5. Present in the BUS Office was BUM Clark, BUS Davenport, and Corrections Officer (C/O) Mrs. Creeley-Luke.

6. BUM Clark informed me that he received a copy of my letter to WSPS Sinclair. BUM Clark started saying that I was lying to staff, and started reading my letter right in front of the other staff, word for word and comparing my letter to his memo.

7. I asked BUM Clark why he called me into the BUS's office, and BUM Clark told me so that he could show me I was lying to staff.

8. I told BUM Clark he did not have to call me into the BUS's office to tell me that.

9. I asked BUM Clark multiple times if I could return to my cell, but he kept saying no.

10. Based on this confrontation that BUM Clark orchestrated, C/O Creeley-Luke wrote me a [false] infraction saying that I was lying to staff.

11. The Minor Infraction was reviewed and authorized by BUS Davenport.

12. On August 11, 2012, I went to the infraction hearing before BUS Jessie. I clearly showed BUS Jessie that my letter was quoting Mrs. Robinson's memo, not BUM Clark's, and that BUM Clark had C/O Creeley-Luke file this [false] infraction to arbitrarally punish me for my informal grievance complaints to WSPS Sinclair about BUM Clark's actions.

13. BUS Jessie found that I was indeed quoting from Mrs. Robinson's memo, not BUM Clark's as C/O Creeley-Luke was [falsely] saying.

14. BUS Jessie found me [not guilty].

15. BUM Clark, C/O Creeley-Luke, BUS Davenport would have reasonably known under clearly established law that they could not infract me for my [valid] informal grievance complaint against BUM Clark to WSPS Sinclair, and would be unlawful and violate my First Amendment rights against retaliation.

16. BUM Clark, C/O Creeley-Luke, and BUS Davenport directly participated in the [false] infraction issued by C/O Creeley-Luke.

///

///

Complaint Affidavit
Page 19 of 27

(xi). Facts Related to Claim No. 11:

I incorporate by reference the facts stated in Facts Related to Claim No. 1 ¶¶ 1-22, Facts Related to Claim No. 2, ¶¶ 1-11, Facts Related to Claim No. 3, ¶¶ 1-34, Facts Related to Claim No. 4, ¶¶ 1-14, Facts Related to Claim No. 5, ¶¶ 1-19, Facts Related to Claim No. 6, 1-9, Facts Related Claim No. 7, ¶¶ 1-23, Facts Related to Claim No. 8, ¶¶ 1-15, Facts Related to Claim No. 9, ¶¶ 1-18, and Facts Related to Claim No. 10, ¶¶ 1-16, as fully reinstated herein, for all intents and purposes, related to Facts Related to Claim No. 11.

1. On August 23, 2012, I was getting legal copies of three (3) law suits I was filing, one (1) against BUM Clark, one (1) against MRS Fleenor, and the other one (1) against BUC Iwrin-McCoy.

2. On August 23, 2012, (Thursday), while I was getting legal copies, BUC Irwin-McCoy started questioning me about what my law suits were about, and for, and as to whether or not I could send them out.

3. BUC Irwin-McCoy stated that she was going to check with MRS Fleenor and see whether or not I could send them out.

4. BUC Irwin-McCoy appeared to me to be upset and angry by the tone of her voice.

5. The next day, August 24, 2012 (Friday), my legal mail containing my 3 law suits were returned to me by the mailroom MRS Fleenor refusing to mail them out, stating no reason at all for refusing to send them.

6. On August 27, 2012, (Monday), when I went to lunch, Mr.Clark was standing outside the Baker Unit B-Pod smiling at me, as C/O Schmidt, C/O Whiteny, and C/O Loe came through the Bake Unit B-Pod, and went directly to my cell to conduct a cell search.

7. C/O Smidt, C/O Whitney, and C/O Loe confiscated my logs where I was keeping the infromation on BUM Clark's retaliatory actions.

8. On August 27, 2012, C/O Schmidt, C/O Whitney, and C/O Loe then infracted me with a 053, 103, and 301, for possessing the log books, pens, paper clips, and other items.

9. On September 8, 2012, at 2:10pm BUS Jessie held my infractions hearing, and found me guilty of the the infraction, and imposed 5 more days of cell confinement.

10. On September 8, 2012, at 5:50 pm, I filed my appeal from the infraction. I filed the appeal within 3 hours of the infraction hearing.

11. On approximately September 20, 2012, I received my appeal back from

the Major Hearings Office, [falsely] saying that I did not file my appeal within 24 hours of the infraction hearing.

12. I filed a grievance but was told that the issue was not grievable.

13. On September 8, 2012, just [after] my minor infraction hearing before BUS Jessie, BUS Jessie then turned around and wrote me another Major Infraction (658) (Receiving 4 minor infractions within 90 days), using the 3 Major Infractions that were reduced to minor's that were issued by BUM Clark in Facts Relating to Claim No.'s 1, 2, 3, 4, 5, 6, 7, 8, and 9, to find me [guilty] of the Major Infraction (658).

14. The infraction written by BUS Jessie was reviewed and authorized by BUM Mr. Rodney Shumate.

15. I was served with the Major Infraction (658) written by BUS Jessie on September 11, 2012.

16. On September 14, 2012, I went to my Major Infraction hearing held by MHO Jackson, and plead not guilty.

17. Based on the infraction report and the 3 Major Infractions that were reduced to minor infractions that were written by BUM Clark, and the infraction written by C/O Schmidt, C/O Whitney, and C/O Loe, MHO Jackson found me guilty of the Major Infraction, and gave me another 15 days loss of gym and yard.

18. I appealed the Major Infraction to WSPS Sinclair, who up-held the infraction.

19. BUS Jessie, BUM Shumate, and MHO Jackson would have reasonably known under clearly established law that they could not [use] the 3 Major Infractions issued by BUM Clark, that were reduced to Minors Infractions, to punish me again for the 658 infraction, and would be unlawful and violate my First Amendment rights against retaliation.

20. BUS Jessie, BUM Shumate, and MHO Jackson directly participated in the infraction issued by BUS Jessie.

(vii). Facts Related to Claim No. 12:

I incorporate by reference the facts stated in Facts Related to Claim No. 1, ¶¶ 1-22, Facts Related to Claim No. 2, ¶¶ 1-11, Facts Related to Claim No. 3, ¶¶ 1-34, Facts Related to Claim No. 4, ¶¶ 1-14, Facts Related to Claim No. 5, ¶¶ 1-19, Facts Related to Claim No. 6, ¶¶ 1-9, Facts Related to Claim No. 7, ¶¶ 1-23, Facts Related to Claim No. 8, ¶¶ 1-15, Facts Related to Claim No. 9, ¶¶ 1-18, Facts Related to Claim No. 10, ¶¶ 1-16, and Facts Related to Claim No. 11, ¶¶ 1-16, as fully reinstated herein for all intents and purposes, related to Facts Related to Claim No. 12.

Complaint Affidavit
Page 21 of 27

1. On July 18, 2005, I sent a letter to WSG Gregoire requesting that she conduct a investigation and establish procedures to identify Washington State Department of Corrections (W-DOC) Staff who retaliate against inmates for exercising civil rights. WSG Gregoire sent me a letter telling me that she would not get involved.

2. On November 21, 2006, I again wrote WSG Gregoire requesting that she investigation W-DOC staff for retaliation against me for exercising my civil rights. WSG Gregoire would not get involved.

3. On December 5, 2006, I again sent WSG Gregoire a letter requesting that she get involved and investigate retaliation by W-DOC staff. WSG Gregoire would not get involved.

4. On December 19, 2006, I again sent a letter to WSG Gregoire requesting that she get involved and investigate W-DPC staff for retaliation. WSG Gregoire would not get involved.

5. Between the years 2007 through 2011, I sent letters to WSG Gregoire, requesting that she get involved and investigate W-DOC staff for retaliation. WSG Gregoire would not get involved.

6. On April 23, 2012, again I sent WSG Gregoire a letter regarding Washington State Penitentiary (WSP) staff retaliating against me and requested that she take action. WSG Gregoire would not get involved.

7. On May 31, 2012, I sent WSG Gregoire another letter regarding retaliation against me by WSP staff.

8. On June 20, 2012, WSG Gregoire sent me a letter telling me that [as far back] as 2005, she has informed me that she does not become involved in inmate complaints, and warned me quote: "[Therefore, I urge you to learn the concept of 'chossing your battles carfully,' and only submit serious concerns which are subject to the grievance procedure]."

9. On June 28, 2012 I sent WSG Gregoire another letter, with an attached letter to the Washington State House of Representitives Criminal Justice & Corrections Committee (WSHR-CJCR) filing a complaint against WSG Gregoire for refusing to preform her duties required by law to "supervise" the Washington State Department of Corrections under Article 3, §5 of the Washington State Constitution.

10. Between June 2012 and August 2012, I sent other letters to WSG Gregoire, requesting to take action to stop the retaliation related to the Facts Related to Claim No.'s 1, 2, 3, 4, 5, 6, 7, 8, and 9.

11. On August 16, 2012, WSG Gregoire sent me another letter, again informing me that she does not become involved in inmate complaints, and that her office will no longer respond to my letter's regarding retaliation

against me by W-DOC staff.

12. WSG Gregoire has been sent multiple letters from W-DOC staff that were responses to my letters to WSG Gregoire.

13. Article 3, §5 of the Washington State Constitution states: "The Governor may require infraction in writing from the state officers relating to the duties of their respective offices, and shall see that the laws are being faithfully executed."

14. The Washington State Legislature Committee on Law & Justice (WSL-CLJ) issued a report stating that under DOC-S Warner's administration, there was a clear (lack of oversight) by the [Governor's Office], making it clear that DOC-S Warner and his subordinates could get away with anything, and that "retaliation" was highly visible, and the message was clear that management decisions were not to be questioned.

15. During WSG Gregoire's administration, (2004-2011), I have been effectively given 3 jury trials against W-DOC staff for retaliation against me for exercising my civil rights.

16. WSG Gregoire would have reasonably known that allowing BUC Irwin-McCoy, BUS Jessie, BUS Davenport, BUM Clark, CPM Knight, MHO Pierce, MHO Jackson, Lt. Williams, Lt. Bayer, Mrs. Henerson, MRS Fleenor, WSPS Sinclair, WSP-AS Bowman, John/Jane Does, BUCO Shatto, C/O Creeley-Luke, BUM Shumate, and DOC-AS Frakes to infract me for my informal grievance letters and kites, would not only violate my clearly established rights under the First Amendment, but would be unlawful under the First Amendment prohibiting retaliation against me for petitioning for redress of grievances.

17. WSG Grewgoire, by refusing to get involved in in my inmate grievances established a custom and unwritten policy that condoned retaliation against me for years within the Washington State Department of Corrections (W-DOC), and the retaliation committed against me by BUC Irwin-McCoy, BUS Jessie, BUS Davenport, BUM Clark, CPM Knight, MHO Pierce, MHO Jackson, Lt. Williams, Lt. Bayer, Mrs. Henderson, MRS Fleenor, WSPS Sinclair, WSP-AS Bowman, John/Jane Does, BUCO Shatto, C/O Creeley-Luke, BUM Shumate, and DOC-AS Frakes can be fairly tracible to WSG Gregoire's custom and policy of ignoring retaliation against me and in general with the W-DOC.

(1) State Law Claim:

(xiii). I incorporate by reference the facts stated in Facts Relating to Claim No. 1, ¶¶ 1-22, Facts Related to Claim No. 2, ¶¶ 1-11, Facts Related to Claim No. 3, ¶¶ 1-34, Facts Related to Claim No. 4, ¶¶ 1-14, Facts Related to Claim No. 5, ¶¶ 1-19, Facts Related to Claim No. 6, ¶¶ 1-9, Facts Related to Claim No. 7, ¶¶ 1-23, Facts Related to Claim No. 8; ¶¶

Complaint Affidavit
Page 23 of 27

1-15, Facts Related to Claim No. 9, ¶¶ 1-18, Facts Relating to Claim No. 10, ¶¶ 1-16, Facts Related to Claim No. 11, ¶¶ 1-19, and Facts Related to Claim No. 12, ¶¶ 1-17, as fully reinstated herein, for all intents and purposes, related to Facts Related to State Law Claim No. 13.

1. A person commits the offense of Criminal Profiteering Activity (WCPA) by intentionally inciting or inducing others to engage in intimidation with the intent to further or promote the accomplishment of a pattern of criminal profiteering activity.

2. BUC Irwin-McCoy, MRS Fleenor, BUS Jessie, CPM Knight, and BUM Clark (Defendants) incited and/or indiced: BOCO Shatto, John/Jane Does, BUS Davenport, MHO Pierce, MHO Jackson, Lt. Williams, Lt. Bayer, AA Meyer, Mrs. Henerson, WSPS Sinclair, WSP-AS Bowman, C/O Creeley-Luke, and BUM Shumate (Defendants), to engaging in intimidation of me by preforming acts or by refraining from preforming acts, with the intent to further and promote the accomplishment of a pattern of criminal profiteering activity, in 2012 (Four Major Infractions submitted by BUM Clark, one minor infraction issued by C/O Creeley-Luke, and one Major infraction issued by BUS Jessie), between July 24, 2012 and September 14, 2012.

3. A pattern of criminal profiteering activity is defined as engaging in at least three acts of criminal profiteering, one of which occurred within five years after commission of the earliest act of criminal profiteering.

4. In paragraph 2 above, I have alleged 6 acts of criminal profiteering activity with the last act occurring within five years after the commission of the eariest act (June 26, 2012), of criminal profiteering.

5. In order to constitute a pattern, the three acts must have the same or similar intent, results, accomplices, principles, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events.

6. Defendants acts have the same or similar intent (to intimidate, chill, and deter the exercise of my First Amendment rights), accomplices and principles (Defendants), victim, "me" (Mr.Entler), method of commission (infractions, retaliation, threats), and a nexus to the same enterprise (Department of Corrections DOC-WSP).

7. Defendant's conduct is not isolated events, because Defendants conduct evidences an intent to accomplish different means of committing the three acts, (1) to stop me from filing grievances, (2) to stop me from filing criminal charges, and (3) to stop me from pursuing civil rights complaints. In addition, prison officials have used the same methods of commission of criminal profiteering activity against other inmates. See Silva v. Divittorio, 658 F.3d 1090, 1104-05 (9th cir. 2011).

///

8. An "enterprise" includes governmental entities, such as the Department of Corrections.

9. Criminal profiteering means any act including any anticipatory or completed offense, committed for pecuniary gain, that is chargeable or indictable under the State Laws in which the act occurred, as any of the following: (1) Extortion as defined in RCW 9A.56.110, 9A.56.120, and 9A.56.130, (2) Criminal profiteering activity as defined in RCW 9A.82.060.

10. "Pecuniary gain" means any gain or advantage in the form of money, property, commercial interests, or anything else the primary significance of which is economic gain. When W-DOC settles a case or a judgment is entered against them in a case, the cost come out of the agencies budget.

11. I claim that the Defendants committed the acts of criminal profiteering activity for financial gain, (to stop me from obtaining a money judgment against them in a civil lawsuit or criminal proceedings) and also to continue to financially gain from there illegal activities through their employment with the State of Washington, and I sought to have them ["fired"].

12. Extortion is defined in RCW 9A.56.110 to means: "'Extortion' means to knowingly to obtain or attempt to obtain by threat property or services of the owner." A "threat" is defined by RCW 9A.04.100(28), "property" and "services" is defined in RCW 9A.04.100(22) (property), and 9A.56.010 (Services).

12. A person is guilty of Extortion in the Second Degree if he commits Extortion by means of a threat as defined in RCW 9A.04.100(28)(h) (to take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding). Extortion in the Second Degree is a Class C felony.

13. Defendant's committed extortion in ther second degree by means of (1) taking wrongful action against me by writing infractions attempting to stop me from preforming acts which I have a legal right to engage in, (i.e., filing grievances, filing criminal charges, and filing civil rights complaints). See State v. McClure, 200 Wash. App. 231, 235 ¶¶ 12-13 (Div. II, Aug. 22, 2017) (defendant seeking victim's promise not to pursue any civil remedy or press criminal charges, and finding that civil remedy has "intangible" monetary value).

14. Defendants committed the crime of second degree extortion against me.

///

///

B. Claims.

    (i) Federal Claims:

    1. Based on the Facts Relating to Claim No.'s 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, I claim (1) that the defendants took adverse actions against me, (2) because of, (3) my protected conduct of filing grievances and my statements that I would file grievances and law suits against them, (4) that defendant's adverse actions would chill or silence a person of ordinary firmness from exercising his First Amendment rights, and (5) defendant's adverse actions did not serve a legitimate penological objective.

    (ii). State Law Claim:

    1. Based on the facts related to claim No.'s 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13, I claim that defendants engaged in acts of criminal profiteering activity by intentionally inciting and inducing others to engage in intimidation of me, with the intent to further and promote the accomplishment of a pattern of criminal profiteering activity, for financial gain (tangible or intangible), which said acts occurred after July 1, 1985, and the last (September 14, 2012), of which occurred within five years after the commission of the earliest (June 26, 2012) act, and the pattern has the same or similar intents, accomplices, principles, victim, method of commission, including a nexus to the same enterprise, and were not isolated events. That Defendants committed criminal profiteering activity for financial gain, that is chargeable and indictable under the criminal laws of the State of Washington as Extortion in the Second Degree, and Criminal Profiteering Activity.

C. Relief Requested.

    (i) Federal Claims:

    1. MONITARY: For claims No.'s 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, I request punitive, nominal, and compensatory damages, for defendant's deliberate and malicious violation of my First Amendment rights.

    2. DECLARATORY: For claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, I request (1) a declaration that defendants would have known that they were violationg my First Amendment rights when they infracted me for my grievances and my statements that I would file grievances and law suits, (2) a declaration that the defendants violated my clearly established rights under the First Amendment which prohibits retaliation for exercising my First Amendment rights.

    (ii) State Law Claim:

    1. I request a penalty under RCW 9A.80.100(d) in an amount not to

exceed TWO HUNDRED FIFTY THOUSAND DALLARS ($250,000.00), to be imposed against [each] defendant.

I declare under the penalty of perjury under the law of the United States that the above is true and correct to the best of my personal knowledge, personal beliefs, and personal experiences.

Signed this _7th_ day of ___November___ ,2018

Signed: _____
JOHN THOMAS ENTLER, #964471
MONROE CORRECTIONAL COMPLEX-TRU
P.O. BOX 888
MONROE, WA. 98272

Subscribed to and sworn to before me this _7th_ day of _November_ , 2018, by John Thomas Entler.

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF WASHINGTON, RESIDING
AT SNOHOMISH COUNTY, WASHINGTON
MY COMMISSION EXPIRES: _05-08-2020_

**Notary Public**
**State of Washington**
**MIRIAM DOMINIQUE KASTLE**
**MY COMMISSION EXPIRES**
**MAY 8, 2020**

///

///

///

///

///

///

///

///

///

///

Complaint Affidavit
Page 27 of 27

ATTACHMENT 2

ATTACHMENT-2



1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   JOHN THOMAS ENTLER,
                                          NO: CV-12-5120-JPH
8                      Plaintiff,
                                          ORDER ADOPTING REPORT AND
9   vs.                                   RECOMMENDATION AND
                                          DISMISSING ACTION WITHOUT
10  DEBORAH CREELEY-LUKE and              PREJUDICE
    LYNN CLARK,
11
                       Defendants.
12

13        Magistrate Judge Hutton filed a Report and Recommendation, ECF No. 11,

14  recommending Mr. Entler's request to Voluntarily Dismiss this action be granted.

15  Defendants have not been served.  There being no objections, the Court **ADOPTS**

16  the Report and Recommendation.  Plaintiff's Motion, ECF No. 10, is **GRANTED**

17  and this action is **DISMISSED WITHOUT PREJUDICE.**

18        Although granted the opportunity to do so, Plaintiff did not file a separate

19  Motion and Affidavit to waive the remaining balance of the filing fee as directed.

20


ORDER DISMISSING ACTION WITHOUT PREJUDICE -- 1

1    Therefore, Plaintiff still is obliged to pay the full filing fee for this action pursuant

2    to 28 U.S.C. § 1915(b).

3        **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

4    Order, enter judgment of dismissal without prejudice, forward a copy to Plaintiff,

5    and close the file.

6        **DATED** this 27th day of February 2013.

7

8                        *s/ Rosanna Malouf Peterson*
                         ROSANNA MALOUF PETERSON
9                        Chief United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

ORDER DISMISSING ACTION WITHOUT PREJUDICE -- 2

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## *Eastern District of Washington*

JOHN THOMAS ENTLER,

        Plaintiff,

        v.

DEBORAH CREELEY-LUKE
and LYNN CLARK,

        Defendants.

## JUDGMENT IN A CIVIL CASE

CASE NUMBER: CV-12-5120-JPH

☐ **Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.**

☒ **Decision by Court. This action came to** hearing **before the Court. The issues have been** heard **and a decision has been rendered.**

IT IS ORDERED AND ADJUDGED: Plaintiff's Motion, ECF No. 10, is GRANTED and this action is DISMISSED WITHOUT PREJUDICE.

| February 27, 2013 | SEAN F. McAVOY |
|---|---|
| *Date* | *Clerk* |
| | s/ Sheila Parpolia |
| | *(By) Deputy Clerk* |
| | Sheila Parpolia |

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7

8   JOHN THOMAS ENTLER,                    NO: 12-CV-5114-CI
                            Plaintiff,
9                                          ORDER ADOPTING REPORT AND
        vs.                                RECOMMENDATION AND
10                                         DISMISSING COMPLAINT
    SGT. S. FLEENOR,                       WITHOUT PREJUDICE
11
                            Defendant.
12

13        Magistrate Judge Imbrogno filed a Report and Recommendation, ECF No. 9,

14   recommending that Mr. Entler's Motion to Voluntarily Dismiss Complaint be

15   granted.  Defendant has not been served.  There being no objections, the Court

16   **ADOPTS** the Report and Recommendation.  Plaintiff's Motion, ECF No. 8, is

17   **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE.**

18        Although granted the opportunity to do so, Plaintiff did not file a separate

19   Motion and Affidavit to waive the remaining balance of the filing fee as directed.

20

ORDER ADOPTING REPORT AND RECOMMENDATION AND
DISMISSING COMPLAINT WITHOUT PREJUDICE -- 1

1   Therefore, Plaintiff still is obliged to pay the full filing fee for this action pursuant

2   to 28 U.S.C. § 1915(b).

3       **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

4   Order, enter judgment of dismissal without prejudice, forward a copy to Plaintiff,

5   and close the file.

6       **DATED** March 6, 2013.

7

8                                        THOMAS O. RICE
                                         United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

ORDER ADOPTING REPORT AND RECOMMENDATION AND
DISMISSING COMPLAINT WITHOUT PREJUDICE -- 2

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## *Eastern District of Washington*

JOHN THOMAS ENTLER,

        Plaintiff,      **JUDGMENT IN A CIVIL CASE**

    v.

SGT. S. FLEENOR,           CASE NUMBER: CV-12-5114-CI

       Defendant.

☐ **Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury
has rendered its verdict.**

☐ **Decision by Court. This action came to** hearing **before the Court. The issues have been**
heard **and a decision has been rendered.**

IT IS ORDERED AND ADJUDGED that Plaintiff's Complaint is dismissed without prejudice.

| | |
|---|---|
| March 7, 2013 | SEAN F. McAVOY |
| *Date* | *Clerk* |
| | s/ Linda Emerson |
| | *(By) Deputy Clerk* |
| | Linda Emerson |

1

2

3

4

5                     UNITED STATES DISTRICT COURT

6                     EASTERN DISTRICT OF WASHINGTON

7  JOHN THOMAS ENTLER,

                                      NO: 12-CV-5122-TOR
8                        Plaintiff,

9       v.                            AMENDED[1] ORDER DISMISSING
                                      COMPLAINT WITHOUT PREJUDICE
   JOANN IRWIN,
10
                         Defendant.
11

12        BEFORE THE COURT is Plaintiff John Thomas Entler's Motion to

13  Voluntarily Dismiss Complaint pursuant to Fed. R. Civ. P. 41(a). Defendants have

14  not been served in this action. Accordingly, **IT IS ORDERED** Plaintiff's Motion,

15  ECF No. 9, is **GRANTED** and the Complaint is **DISMISSED WITHOUT**

16  **PREJUDICE.**

17        Although granted the opportunity to do so, Plaintiff did not file a separate

18  Motion and Affidavit to waive the remaining balance of the filing fee as directed.

19

20  _____
   [1] This Order supersedes the Order of Dismissal filed at ECF No. 10.


   AMENDED ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE --1

1  Therefore, Plaintiff still is obliged to pay the full filing fee for this action pursuant

2  to 28 U.S.C. § 1915(b).

3       **IT IS SO ORDERED**.  The District Court Executive is directed to enter this

4  Order, enter judgment of dismissal without prejudice, forward a copy to Plaintiff,

5  and close the file.

6       **DATED** this 18th day of January, 2013.

7

8                                    *s/ Thomas O. Rice*
                                 THOMAS O. RICE
                            United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

AMENDED ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE --2

AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## *Eastern District of Washington*

JOHN THOMAS ENTLER,

        Plaintiff,

                            JUDGMENT IN A CIVIL CASE

        v.

JOANN IRWIN,

                          CASE NUMBER: 12-CV-5122-TOR

        Defendant.

☐ **Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.**

☒ **Decision by Court. This action came to** hearing **before the Court. The issues have been** heard **and a decision has been rendered.**

IT IS ORDERED AND ADJUDGED: the Complaint is DISMISSED WITHOUT PREJUDICE.

| | |
|---|---|
| February 19, 2013 | SEAN F. McAVOY |
| *Date* | *Clerk* |
| | s/ Sheila Parpolia |
| | *(By) Deputy Clerk* |
| | Sheila Parpolia |