UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN THOMAS ENTLER,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINE GREGOIRE, BERNIE WARNER, STEVEN SINCLAIR, RON KNIGHT, LYNN/IRISH CLARK and MR. PIERCE,<br><br>Defendants. | NO. 2:12-CV-5141-TOR<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment. ECF No. 145. This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed.

**BACKGROUND**

This case was filed on October 29, 2012, against six government officials, including the former Governor of Washington. ECF No. 1. In essence, Plaintiff alleged he was disciplined for his threats under a Washington Department of

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 1

Corrections regulation that bars prisoners from intimidating or coercing prison staff. The Court dismissed the federal claims based on the failure to state an actionable First Amendment claim and alternatively, the prison officials were entitled to qualified immunity. ECF Nos. 57, 61, 77. Mr. Entler then appealed. ECF No. 79. The Ninth Circuit reversed the dismissal of Mr. Entler's claims, in part. *Entler v. Gregoire*, 872 F.3d 1031 (9th Cir. 2017); ECF No. 90. With regard to plaintiff's threats to bring civil litigation, the Ninth Circuit disagreed with the district court's conclusions that plaintiff had not alleged an actionable First Amendment retaliation claim and that, alternatively, the prison officials were entitled to qualified immunity. *Id*. The Ninth Circuit held that threats to sue fall within the purview of the constitutionally protected right to file grievances and that in 2012 it was clearly established that plaintiff had a right to file his grievances and pursue civil litigation. *Id*. However, with regard to Plaintiff's threat to file a criminal complaint the Ninth Circuit held that defendants were entitled to qualified immunity because it was not clearly established at the time that the threat to file a criminal complaint was constitutionally protected conduct. *Id*.

On April 3, 2018, the Mandate was filed which remanded the case back to this Court for further proceedings in accordance with the decision of the Ninth Circuit. ECF No. 96.

On May 8, 2018, Defendants filed a motion for judgment on the pleadings, contending that Plaintiff failed to sufficiently allege their personal participation in the complained of acts. ECF No. 98. Mr. Entler sought, and the Court granted several extensions of time for him to respond and/or amend his complaint. ECF Nos. 105, 107, 112, 117, 124, 128, 130, and 132.

Ultimately, on January 31, 2019, Mr. Entler filed a Second Amended Complaint (SAC). ECF No. 133. In the SAC, Mr. Entler alleges the Defendants violated his "First Amendment rights to Petition the Government for Redress of Grievances (Unlawful Retaliation)" and "State Law claim of Leading Organized Crime RCW 9A.80.100." *Id*. at 2-3. Substantively, Mr. Entler claims that he exercised his First Amendment rights by sending kites to various individuals threatening to: e.g., "sue you", "seek legal redress", "file a grievance", "file a formal complaint", and "initiate litigation". As a result, he claims Defendant Clark issued four infractions against him that resulted in two disciplinary hearings, one on August 1, 2012 and one on August 15, 2012. *Id*. at 4-7, ¶¶ B.7, C.6, C.10, D.3. At the August 1, 2012 hearing, Mr. Entler claims Hearing Officer Jackson found intimidation and sentenced him to "fifteen days of lost big yard and gym time." At the August 15, 2012 hearing, Mr. Entler claims Defendant Hearing Officer Pierce found harassment and sentenced him to "five days cell confinement" and warned him not to badger WSP employees for thirty days or Mr. Entler would

receive a serious infraction." *Id*. at 6-7, ¶¶ C.7, C.12, D.4. Mr. Entler's SAC also includes allegations of personal participation by the named Defendants. *Id*. at 7-12.

On April 5, 2019, Defendants filed a Motion for Summary Judgment. ECF No. 145. Defendants filed the necessary *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) notice, as well. ECF No. 150. Mr. Entler filed his opposition to Defendants' Motion for Summary Judgment, ECF No. 161, his Statement of Facts in Opposition, ECF No. 162, and a Supplement to his Opposition, ECF No. 164. Defendants filed their Reply, Reply Statement of Facts and the transcript of Mr. Entler's deposition. ECF Nos. 169, 170, 171-1.

**DISCUSSION**

**A. Standard of Review on Motion for Summary Judgment**

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify

specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. Per Rule 56(c), the parties must support assertions by: "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Liberty Lobby, Inc.*, 477 U.S. at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B. Lack of Personal Participation**

Defendants Gregoire, Warner and Sinclair seek summary judgment for lack of any showing that they personally participated in depriving Mr. Entler of his constitutional rights.

//

//

### 1. Defendant Christine Gregoire

Mr. Entler's SAC alleges that Christine Gregoire, the former Governor of the State of Washington, sent Mr. Entler a letter stating that she would not intervene to protect him against prison-employee retaliation and warned that he should "choos[e] [his] battles carefully." ECF No. 133 at 7. Mr. Entler alleges that Governor Gregoire knew or reasonably should have known that prison employees would read or be informed about her letter, that it could reasonably be viewed as condoning retaliation, and therefore, the retaliation he suffered could reasonably be traceable to Governor Gregoire's custom and policy. *Id*. at 7-8. In his opposition to Defendants' motion, Mr. Entler points to the June 20, 2012 letter and another letter dated August 16, 2012 from Governor Gregoire to show that she refused to get involved even though she had a duty to supervise the Department of Correction employees. ECF No. 161 at 14-15. Tellingly, Mr. Entler complains that Governor "Gregoire's office had a policy or custom of turning a blind eye to retaliation. . ." *Id*. at 15.

Both referenced letters are in the record and neither letter comes from Governor Gregoire. *See* ECF No. 113-30 at 2-3. Both letters come from Constituent Services, Office of the Governor, but neither appears to be written or signed by the Governor. The first letter urges Mr. Entler to use the grievance process to resolve his issues and the second letter encourages contact with the U.S.

Department of Justice if he thinks they would assist. Critically absent from Mr. Entler's letters to the Governor's Office is any notice that he was being punished for threatening to file suit, but rather the letters merely complained of being "threatened with infraction and have me punished for what I say and request in my informal grievance complaints." *See e.g.*, ECF No. 113-30 at 5-8. These broad generalities, even if they were read by Governor Gregoire, which no evidence has been submitted to show they were, do not put Governor Gregoire on notice of any constitutional violation.

Without any evidence of direct involvement, knowledge or participation, Governor Gregoire cannot be held liable for the actions of the Department of Corrections employees. Having failed to come forward with evidence of her personal participation, summary judgment in favor of Christine Gregoire is therefore granted.

**2. Defendant Bernie Warner**

Mr. Entler's SAC alleges that he wrote a letter to Bernie Warner, then Secretary of the Washington State Department of Corrections, on August 1, 2012 and that Mr. Warner never responded. ECF No. 133 at 9. Mr. Entler complains that Mr. Warner was likely aware of his efforts to have them investigated. *Id*. at 10 ("them" apparently a reference to Department of Correction employees). Mr. Entler asserts that it is reasonably inferable that Mr. Warner would have been privy

to and likely helped establish the custom and policies articulated by Gregoire and Sinclair and as a result the retaliatory action taken against Mr. Entler could reasonably be traced to Mr. Warner's custom and practices. *Id*. At his deposition, Mr. Entler conceded that he had no evidence that Mr. Warner ever personally read Mr. Entler's letter. ECF No. 147-1 at 52. At his deposition, Mr. Entler stated, "As a matter of fact, I'm willing to dismiss Warner from the suit. I believe I conceded to that already in my pleadings." *Id*.

Without any evidence of Mr. Warner's knowledge or personal participation, Mr. Entler cannot demonstrate his liability. Summary judgment in favor of Mr. Warner is therefore granted.

### 3. Defendant Steven Sinclair

Mr. Entler's SAC alleges that Steven Sinclair, the former Superintendent of the Washington State Penitentiary, personally reviewed and affirmed "sanction 1." ECF No. 133 at 8. Mr. Entler complains that he wrote Mr. Sinclair and he consistently refused to intervene to protect Mr. Entler from patent retaliatory acts. *Id*.

Mr. Sinclair contends that the fact that he affirmed an infraction is insufficient to establish a viable claim of retaliation. ECF No. 145 at 7. He argues that an officer who reviews an infraction is not the cause or moving force behind the initial issuance of the infraction and that the mere review of a disciplinary

infraction is not sufficiently adverse to constitute a viable claim. *Id*.

It is undisputed that Mr. Sinclair received and read several complaints or kites from Mr. Entler and reviewed and affirmed the sanctions against Mr. Entler. But for the affirmance of the sanction, Mr. Entler would not have been punished. Therefore, Mr. Sinclair's personal participation has been established. Mr. Sinclair's motion for summary judgment on this basis is denied.

**C. First Amendment Retaliation Claim**

Defendants contend that Mr. Entler's retaliation claims fail for two reasons: first, that the sanctions did not have a chilling effect on his First Amendment rights; and second, that prison staff had a legitimate penological interest for taking action to address his comments. ECF No. 145 at 8-13.

In order to prevail on his First Amendment retaliation claim, Mr. Entler needs to show: "(1) . . . a state actor took some adverse action against [him] (2) because of (3) [his] protected conduct, and that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Entler v. Gregoire*, 872 F.3d 1031, 1040 (9th Cir. 2017) (quoting *Rhodes v. Robinson*, 408 F.3d at 567-68 (9th Cir. 2005)).

Mr. Entler suffered "fifteen days of lost big yard and gym time," "five days cell confinement" and was warned not to badger WSP employees for thirty days or Mr. Entler would receive a serious infraction. A harm that is more than minimal

will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567 n.11. The "chilling inquiry" is governed by an objective standard; "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568–69 (original quoted source omitted)). Here, Mr. Entler has alleged sufficient harm or punishment to overcome a motion for summary judgment allowing him to present this issue to the jury.

Defendants contend that prison staff had a legitimate penological interest for taking action to address Mr. Entler's comments. The Ninth Circuit considered this issue and rejected Defendants argument:

> But, in addition to incorrectly contending that Entler's informal complaints were not protected conduct, they assert that the application of Rule 663 reasonably advanced a legitimate correctional goal. That would be so if there was a "'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001) (quoting *Turner*, 482 U.S. at 89, 107 S.Ct. 2254) (alterations in the original).
>
> However, Entler's kites simply set forth the bases for his grievances, often in a respectful tone (e.g., twice beseeching the authorities to "[p]lease remove" the contested $200 charge), and since he had the right to threaten to sue if his grievances were not addressed, the nexus between the application of the rule and the government's stated interest of preventing the coercion or intimidation of prison staff was "so remote as to render the policy['s application] arbitrary or irrational," *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254.

*Entler v. Gregoire*, 872 F.3d at 1040-41 (footnote omitted). Granted, the Ninth Circuit considered this issue in the context of reviewing a motion for judgment on the pleadings under Rule 12(c), but Defendants have come forward with no other substantive evidence to refute the Ninth Circuit's ruling. Even if there was an argument to be made that a legitimate penological interest was being pursued, there remains a genuine dispute of material facts preventing summary judgment on this issue.

Next, Defendants contend, in light of the more developed factual record, the Court could appropriately conclude Defendants are entitled to qualified immunity. ECF No. 145 at 13-14. This Court disagrees. The Ninth Circuit thoroughly addressed this issue, as well:

> First, it was, of course, clearly established when Entler filed his grievances in 2012 that he had the "constitutional right" to do that, *see Turner*, 482 U.S. at 84, 107 S.Ct. 2254—a right that did not "hinge on the label" the prison placed on his complaints. *Brodheim*, 584 F.3d at 1271 n.4.19 Nor could the prison's officials "escape constitutional scrutiny by citing a legitimate penological interest" in the absence— as here—of a "valid, rational connection" between the adverse action imposed on the prisoner and the government's stated interest. *Id.* at 1272–73. And it was also clearly established that Entler had the time-honored right to pursue civil litigation, a right liberally exercised for over forty years. *See William Bennett Turner, When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv. L. Rev. 610, 610–11 (1979) (recognizing that "[p]risoners, like other people, may sue state and local officials under 42 U.S.C. § 1983, to redress the deprivation of federal constitutional rights" and discussing an "upsurge in volume" of such suits beginning in the 1970s).

> It was also beyond cavil that Entler's grievances were the first requisite steps in the pursuit of civil litigation. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("[E]xhaustion is now required for all action[s] . . . brought with respect to prison conditions, whether under § 1983 or any other Federal law."). The threat of civil litigation if a prisoner's complaints are not redressed is implicit in every grievance; explicitly articulating that threat as a precursor to initiating civil litigation does not suddenly make that threat more intimidating or coercive.

*Entler v. Gregoire*, 872 F.3d at 1041–42 (footnote omitted). Again, Defendants have come forward with no other substantive evidence to refute the Ninth Circuit's ruling.

Finally, Defendants seek to dismiss the claims related to the first infraction, which included the threat to file criminal charges, because Mr. Entler has not established that this infraction would have been issued if his complaints had omitted the threat to file criminal charges. ECF No. 145 at 15. Mr. Entler only has the burden to prove Defendant's deterrence or chilling of his First Amendment rights was a substantial or motivating factor for Defendants' conduct. *See Mendocino Env'l Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1300 (9th Cir. 1999). The burden then shifts to a Defendant to show that even without the impetus to retaliate the action would have been taken anyway. *See Hartman v. Moore*, 547 U.S. 250, 260-61 (2006) ("It is clear, moreover, that the causation is understood to be but-for causation, without which the adverse action would not have been taken; we say that upon a prima facie showing of retaliatory harm, the burden shifts to the

ORDER ON MOTION FOR SUMMARY JUDGMENT ~ 12

defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee).").  However, the Court observes that the second imposition of sanctions did not include the threat to file criminal charges and still resulted in punishment, implying that the threat of criminal charges did not impact the decision.  Given this record, a genuine dispute of material facts remains, warranting the denial of summary judgment.

### D. Compensatory Damages

Defendants first preserve their argument that the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), precludes any damages for mental or emotional injury without a prior showing of a physical injury.  ECF No. 145 at 16.  However, Defendants recognize that the Ninth Circuit has adopted what they describe as "a different view" and found that this provision does not apply to First Amendment claims.  *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred.  Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought.").

Next, Defendants contend that Mr. Entler cannot recover damages based on the valuation of the abstract importance of a constitutional right.  ECF No. 145 at

16. Defendants cite *Memphis Community School District v. Stachura*, 477 U.S. 299, 306-07 (1986), for this proposition.

Mr. Entler agrees that he must prove "actual injury" and cannot receive damages based on the "abstract value or importance" of the constitutional right. ECF No. 161 at 9. Mr. Entler suggests that when damages are difficult to establish, some form or presumed damages may be appropriate. *Id*. (citing *Stachura*, 477 U.S. at 310-11.). Mr. Entler then suggests that he should receive up to $5,000 from each defendant because that is the maximum fine for committing crimes that result in deprivations of rights and privileges under color of law. *Id*. at 10. The Court rejects such analogy. No officer has been found to have committed a crime and the analogy used by the Supreme Court applied to punitive damages not compensatory damages for actual injury.

In accordance with *Canell* and *Stachura*, Mr. Entler is entitled to a jury instruction limiting compensatory damages to the actual First Amendment injury he suffered. Defendants' motion for summary judgment on actual damages is denied.

**E. Punitive Damages**

Defendants argue that Mr. Entler's claim for punitive damages must be dismissed. Defendants contend that "there is insufficient evidence of additional aggravating circumstances that would rise to the level of conduct required to award

punitive damages." ECF No. 145 at 18. Defendants explain that punitive damages are only available when a defendant's conduct was "motivated by evil motive or intent, for actions that were 'oppressively done,' or when the defendant's actions involve reckless or callous indifference to the federally protected rights of others." *Id*. at 17.

Mr. Entler argues and cites evidence to support his theory that he is entitled to a punitive damages instruction because, inter alia: defendants' actions involve reckless disregard of plaintiff's rights; defendants' retaliation necessarily involves the intent to infringe on plaintiff's rights (substantial or motivating factor); punitive damages will often be appropriate where liability is based upon defendant's subjective intentions (citing *Sloman v. Tadlock*, 21 F.3d at 1473 n.13); the Ninth Circuit rejected qualified immunity because "every reasonable official would have understood what he is doing violates" Plaintiff's rights; and that the repeated conduct here is more reprehensible than an individual instance of malfeasance. ECF No. 161 at 11-12.

Given the evidence and argument proffered at this stage of the proceeding, genuine issues of material fact remain. Summary judgment on the punitive damage issue is denied at this time.

//

//

## F. State Law Claim for Violation of the Criminal Profiteering Act

Under the Criminal Profiteering Act, "a person who sustains injury to his or her person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or by [various state law offenses] may file an action in superior court for the recovery of damages and the costs of the suit, including reasonable investigative and attorney's fees." RCW 9A.82.100(1)(a). Defendants seek dismissal of Mr. Entler's state law claims for four reasons: first, there is insufficient evidence that Defendants' action were motivated by financial gain; second, there is insufficient evidence to establish that the four infractions were a pattern of criminal profiteering activity as opposed to isolated events; third, there is not sufficient evidence upon which a reasonable jury could conclude that Defendants committed any of the predicate offenses required to establish criminal profiteering; and fourth, Mr. Entler lacks standing to seek civil penalties under Washington criminal profiteering act (as opposed to damages). ECF No. 145 at 18-20.

Mr. Entler opposes dismissal of his state law claim. He explains that the defendants continued to receive their paychecks through their employment and this constitutes financial gain. "Criminal profiteering" means any act . . . committed for financial gain. *See* RCW 9A.82.010(4). Here, Mr. Entler is mistaken. Mr. Entler has not come forward with any evidence that shows the Defendants were

motivated to violate his constitutional rights so they would continue to be paid. They were paid whether or not Mr. Entler was infracted or sanctioned. Thus, evidence of their financial motivation is completely lacking. Mr. Entler has the burden of coming forward with a prima facie case demonstrating the elements of his claim. Yet, he has shown no financial motive by any of these Defendants. Defendants' motion for summary judgment dismissing the state law claim is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 145) is **GRANTED** in part and **DENIED** in part.
2. Defendants Christine Gregoire and Bernie Warner are **DISMISSED**.

The Clerk of Court shall terminate them from the docket of this case.

The District Court Executive is directed to enter this Order and furnish copies to the parties.

**DATED** July 10, 2019.



THOMAS O. RICE
Chief United States District Judge